**COMP**
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax:(702) 643-6292
Chattahlaw@gmail.com
Attorney for Plaintiffs

# THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DANNY ITZHAKI, an individual,<br>NATALIE HETLY, and individual<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN F.SISOLAK, in his official capacity<br>as Governor of the State of Nevada, AARON<br>DARNELL FORD, in his official capacity as<br>Attorney General of the State of Nevada, IHSAN<br>AZZAM, in his capacity as Nevada Chief<br>Medical Officer, NEVADA DEPARTMENT OF,<br>HEALTH AND HUMAN SERVICES, a Nevada<br>Administrative Agency, DOES 1 through 100<br><br>Defendants. | **DEMAND FOR JURY TRIAL** |

# COMPLAINT FOR TEMPORARY
# RESTRAINING ORDER, DECLARATORY JUDGMENT, AND PRELIMINARY AND
# PERMANENT INJUNCTIVE RELIEF

COME NOW, Plaintiffs, DANIEL ITZHKI and NATALIE HETLY, who bring this

action on behalf of themselves and on behalf of all similarly situated persons (collectively

"PLAINTIFFS") by and through the undersigned attorneys of record SIGAL CHATTAH, ESQ.

of CHATTAH LAW GROUP, respectfully request this Court to issue a Temporary Restraining

Order, Declaratory Judgment, and Preliminary and Permanent Injunctive Relief and Damages. In support thereof, Plaintiff shows unto the Court as follows:

**<u>PRELIMINARY STATEMENT</u>**

1.    Plaintiffs DANIEL ITZHAKI and NATALIE HETLY are residents of Clark County, Nevada and both over the age of Seventy years of age.

2.    Despite Senior citizens and the elderly of the State of Nevada, being an especially vulnerable and protected class, more susceptible to comorbidities and serious bodily harm or death from COVID-19, Defendants and each of them denied this protected group of individuals access to the COVID-19 vaccines in an arbitrary and capricious manner through the establishment of Tier distribution as delineated *infra*.

3.    On December 13, 2020, Defendant Sisolak announced that due to the rising cases of COVID-19, the Statewide pause would be extended to January 15, 2021.

4.    On or about December 15, 2020, Nevada began receiving doses of the vaccines distributed by Pfizer-BioNtech and Moderna for distribution through the State's established program.

5.    The State of Nevada's key metrics provide that Nevada has on average approximately 1858 confirmed cases daily of the COVID-19 virus.

6.    As of the date of this Class Action Complaint, there is a confirmed count of over 250,000 COVID-19 cases, according to the State of Nevada's metrics published by Nevadahealthresponse.nv.gov., with 19 daily deaths published by same.

7.    Furthermore, as of the date of filing this Class Action Complaint, the State of Nevada has received more than 205,200 doses of the vaccine according to the Center for Disease Control and Prevention's ("CDC") vaccination data.

8.      Less than 2% percent of Nevadans have been vaccinated using only 24% of the dosages received by the State of Nevada by Pfizer- BioNtech and Moderna.

## NATURE OF ACTION AND JURSIDICTION

9.      This is a civil action under 42 U.S.C § 1983 seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States; retaliating against Plaintiffs; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.

10.      This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiffs' Constitutional rights to Due Process and Equal Protection under the Fifth and Fourteenth Amendments, and their rights against Cruel and Unusual Punishment under the Eighth Amendment to the U.S. Constitution. Accordingly, this Court has Federal Question Jurisdiction under 28 U.S.C. §§ 1331 and 1343.

11.      This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988. Plaintiffs, therefore, on behalf of themselves and all others similarly situated, seek damages and declaratory and injunctive relief accordingly.

12.      The District of Nevada is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants either maintain offices or do substantial official government work in, exercise their authority in their official capacities, and will continue to enforce the Orders; and it is the District in which substantially all of the events giving rise to the claims occurred.

13.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant

to 28 U.S.C. § 1367(a) because they are part of the same case and controversy described by Plaintiffs' federal claims.

## THE PARTIES

PLAINTIFFS

14.    Plaintiff DANIEL ITZHAKI is a citizen of the United States and was, at all times relevant to this complaint, a resident of Clark County having attained the age of 74 years old.

15.    Plaintiff NATALIE HETLY, is a citizen of the United States and was, at all times relevant to this complaint, a resident of Clark County, Nevada having attained the age of 70 years old.

DEFENDANTS

16.    Defendant STEPHEN F. SISOLAK, at all times relevant to this complaint, a resident of the State of Nevada, acting as the Governor of the State of Nevada.

17.     Defendant AARON DARNELL FORD, was and is at all times relevant herein the Attorney General for the State of Nevada.

18.    Defendant IHSAN AZZAM, Ph.D., M.D., was and is at all times relevant herein the Chief Medical Examiner for the State of Nevada, relegated by Defendant Governor Sisolak during the COVID-19 period and acting on his behalf.

19.    Defendant. NEVADA DEPARTMENT OF, HEALTH AND HUMAN SERVICES (hereinafter "DHHS"), was and is at all times relevant herein an Administrative Agency operating in the State of Nevada, acting with and at the direction of Defendant Governor Sisolak

20.    At all times pertinent herein, Defendants were agents, servants, employees, or joint venturers of every other Defendant, and at all times mentioned herein were acting

within the scope and course of said agency, employment, or joint venture, with knowledge

and permission and consent of all other named Defendants. Whenever and wherever

reference is made in this Complaint to any acts by Defendants, such allegations and

references shall also be deemed to mean the acts of each Defendant acting individually,

jointly or severally.

21.    All of the actions taken by Defendants and/or those acting on behalf of

Defendants and referred to herein, were done by Defendants while acting under color or state of

law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of

the United States.

22.    The true names and capacities, whether individual, corporate, associate, or

otherwise, of Defendants DOES 1 through 100, are unknown to Plaintiffs, who therefore sue

said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon

allege that each of the Defendants designated herein as a DOE is responsible in some

manner for the events and happenings herein referred to. As such, Plaintiffs will seek leave

of Court to amend this Complaint to insert the true names and capacities of said Defendant

as they become identified.

## CLASS ALLEGATIONS

23.    The treatment to which Plaintiffs, and the class they represent, have and will be

subjected, specifically the arbitrary denial of medical care, the arbitrary restriction of drugs

approved by the FDA for use in the vaccination against COVID-19, the violation of NRS

441A.200, the violation of Plaintiffs' First, Fifth and Eighth Amendment Constitutional rights –

were all performed pursuant to the policies, customs, and/or practices of Defendants.

24.    Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an order declaring that Defendants' treatment of Plaintiffs pursuant to these policies, customs, and/or practices is unlawful.

25.    Plaintiffs bring this action on their own behalf and on behalf of all persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(3).  Plaintiffs seek certification of a class defined as follows:

a.    All persons qualified to old age benefits, under 42 U.S. Code CHAPTER 7 and defined under §402 of said Chapter; to wit: individuals sixty-two (62) years of age at the time of filing this action *i.e.*, all individuals born on or after January 11, 1959.

b.    All persons who were unable to receive the COVID- 19 vaccinations distributed to the State of Nevada according to eligibility under the Tier distribution program;

c.    All persons who were deprived of their Constitutional and Statutory rights under NRS 441A.200 and as described in *Roe v. Wade* (1973); and

d.    All persons affected by the wanton and reckless disregard of Defendants' conduct to the detriment of the residents of the State of Nevada.

26.    Pursuant to Federal Rule of Civil Procedure 23(a), the members of the class are so numerous that joinder of all members is impractical.  Plaintiffs do not know the exact number of class members.  Plaintiffs are informed and believe, and thereupon allege that there are more than 300,000 persons in the class defined above.

27.    Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs are informed and believe, and thereupon allege, that there are questions of law and fact common to the class, including but not limited to:

a.      Whether Defendants' designation of class members as defined by 42 USC §402 through an arbitrarily Tiered vaccination program was arbitrary and capricious action taken by Defendant Governor Sisolak and the Defendants named above;

b.      Whether the emergency regulation prohibiting the prescription and issuance, filling, and dispensing of Pfizer-BioNtech and Moderna COVID-19 vaccines was arbitrary and capricious action and willful misconduct on behalf of Defendant Governor Sisolak and Codefendants.

c.      Whether Defendants' bad faith and willful misconduct harmed the Plaintiff class and precluded them from obtaining vaccinations violates their right against cruel and unusual punishment under the Eighth Amendment of the United States Constitution;

d.      Whether Defendants engaged in gross negligence, willful misconduct, and bad faith and are liable for violating the First, Fourth, Eighth and Fourteenth Amendment rights of the Plaintiff class; and

e.      Whether Defendants should be enjoined from engaging in this gross negligence and willful misconduct which has been detrimental to the State of Nevada and its residents.

28.     Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs' claims are typical of the class they seek to represent.  Plaintiffs and the class they seek to represent were all subjected to violations of their Constitutional rights over the course of the past four weeks in the State of Nevada.

29.     Plaintiffs have the same interests and have suffered the same type of injuries as the proposed class.  Each proposed class member suffered actual damages as a result of the challenged conduct.

30.     Plaintiffs' claims arose because of Defendants' policies, customs, and/or practices.  Plaintiffs' claims are based upon the same legal theories as the claims of the proposed class members.

31.     Plaintiffs' counsel has the resources, experience, and expertise to successfully prosecute this action against Defendants.  Counsel knows of no conflicts among any members of the class, or between counsel and any members of the class.

32.     Pursuant to Federal Rule of Evidence 23(b)(3), upon certification, class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

33.     If this action is certified as a class action, Plaintiffs contemplate that individual notice will be given to class members, at such last known address by first class mail, as well as notice by publication informing them of the following:

a.   The pendency of the class action and the issues common to the class;

b.   The nature of the action;

c.   The right to "opt-out" of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

d.   Their right to "opt-out" to be represented by their own counsel and to enter an appearance in the case, otherwise they will be represented by the named class Plaintiffs and their counsel; and

e.   Their right, if they do not "opt-out", to share in any recovery in favor of the class, and conversely, to be bound by any judgment on the common issues adverse to the class.

## SUMMARY OF FACTS

34.    On May 15, 2020, United States President Donald J. Trump, announced a public-private initiative named Operation Warp Speed (OWS) to facilitate and accelerate the development, manufacturing, and distribution of COVID-19 vaccines, therapeutics, and diagnostics.

35.    The program promoted mass production of multiple vaccines, and different types of vaccine technologies, based on preliminary evidence, allowing for faster distribution if clinical trials confirm one of the vaccines is safe and effective.

36.    In October 2020, Alex Azar predicted 100 million available doses by the end of the 2020 year.

37.    On or about October 29, 2020, Defendants DHHS issued a roadmap for vaccination in Nevada labeled, Vaccination Planning Assumptions for Jurisdictions which continues to be updated from time to time.

38.    On November 9, 2020, the Pfizer-BioNTech partnership announced positive early results from its Phase III trial of the BNT162b2 vaccine candidate, and on December 11, 2020 the FDA provided emergency use authorization, initiating the distribution of the vaccine followed by the Centers for Disease Control and Prevention (CDC)'s recommendation for use, clearing the way for delivery and administration of the vaccine throughout the United States.

39.    Vaccine doses purchased by Operation Warp Speed were sent from manufacturers via UPS and FedEx to locations specified by state governments.

40.    The Federal Pharmacy Partnership delivered doses to CVS and Walgreens locations, which then send pharmacists for mass vaccinations at care facilities like nursing homes.

41.    Defendant IHSAN AZZAM, Nevada's Chief Medical Officer provides direction for the State's immunization program which commenced in November, 2020, with the plan to distributed the vaccines upon arrival in the State of Nevada.

42.    While COVID-19 vaccines were issued to the State of Nevada in limited supply, distribution was to be determined in direct proportion to the nation's adult population 18 years and older.

43.    The pro rata method was approved on Nov. 6, 2020, by United States Health and Human Services Secretary Alex Azar.

44.    Once vaccines were allocated, it was up to each State's jurisdiction or agency to place orders, designate delivery points, prioritize recipients and administer vaccines to the American people.

45.    The Southern Nevada Health District established a tiered distribution is planned to ensure there is equitable access to the vaccine by the ***critical populations*** identified by the Centers for Disease Control and Prevention (CDC).

TIER 1
General Medical and Surgical Hospital
•Long Term Care Facility Staff and Residents
• Psychiatric and Substance Disorder Hospital
• Emergency Medical Services Personnel
• Public Health Workforce
• Laboratory Workers
• Pharmacists and Pharmacy Technicians
• Outpatient and Home Health Providers
 • Nevada Department of Corrections Staff
• Law Enforcement and Public Safety

TIER 2
• Deployed and mission critical personnel who play an essential role in national security
• Emergency Operations Center Staff
• POD Volunteers
• Education and Childcare Staff

• Nevada System of Higher Education (NSHE) Faculty
• Essential Public Transportation
• Agriculture and Food Processing
• Essential Retail Workers
• Logistics and Supply Chain
• Utilities and Communications Infrastructure
• NDOT and Local Emergency Road Personnel
• Community Support (e.g., food banks, DETR, WIC)
• Airport Operations
• Depository Credit Institution Workforce
• Mortuary Services
• Remaining Public Health Workforce
• Additional Critical Infrastructure
• Inmates

TIER 3
• Transitional Housing for Released Offenders
• Homeless
• People with Underlying Health Conditions that are at Increased Risk for Severe Illness from COVID-19
• Elderly Nevadans Age 65+ without Underlying Health Conditions
• Remainder of NSHE Staff

TIER 4

• Healthy People Aged 16-64

46.     According to the US National Library of Medical & National Institutes of Health elderly[1] patients with COVID-19 indicated relatively higher proportion of comorbidities, and the most common were atherosclerotic cardiovascular disease (56.5%), hypertension (43.5%) and chronic pulmonary disease (21.7%). The proportion of severe cases was higher in elderly group than that in non-elderly group (73.9% and 42.2%, respectively).

47.     During hospitalization, elderly patients indicated relatively higher proportion of complications, such as shock (21.7%), respiratory failure (21.7%).

---

[1]  Elderly patients are those over the age of 60 years old and non-elderly group under 60 years old.

48.     The proportion of patients with a decreased number of CD8+ lymphocytes (82.6%) and B lymphocytes (77.8%) in elderly patients is found to be significantly higher than that in non-elderly groups (48.9% and 44.8%, respectively).

49.     Elderly patients with COVID-19 had a high proportion of severe cases and comorbidities, more likely to show low immune function, and indicate higher proportion of complications.

50.     According to the CDC, 8 out of 10 COVID deaths reported in the US have been in adults 65 or older.

51.     Based on the CDC guidelines, adults of any age with the following conditions might be at an increased risk for severe illness from the virus that causes COVID-19:

Asthma (moderate-to-severe)
Cerebrovascular disease (affects blood vessels and blood supply to the brain)
Cystic fibrosis
Hypertension or high blood pressure
Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines
Neurologic conditions, such as dementia
Liver disease
Overweight (BMI > 25 kg/m$^2$, but < 30 kg/m$^2$)
Pulmonary fibrosis (having damaged or scarred lung tissues)
Thalassemia (a type of blood disorder)
Type 1 diabetes mellitus

52.     On December 13, 2020, Sisolak announced that due to the rising cases of COVID-19, the Statewide pause would be extended to January 15, 2021.

53.     On or about December 15, 2020, Nevada began receiving doses of the vaccines distributed by Pfizer- BioNtech and Moderna for distribution through the State's established program.

54.     As of the date of this Complaint, there is a confirmed count of over 250,000.00 COVID-19 cases in Nevada according to the State's metrics published by Nevadahealthresponse.nv.gov., with 19 daily deaths published by same.

55.     Approximately over 3,500 people in Nevada have died from coronavirus since March, 2020.  Of this population, more than 2,500 of them were over 70; More than 600 were ages 60 to 69. Among those under 40, fewer than 200 have passed away.  Nevada's current positivity rate stands at 21%.

56.     Despite having access to the subject empirical and medical data, Defendants deliberately and with an utter disregard for such empirical data, created an arbitrary and capricious Tier system that discriminates against a vulnerable and protected class of citizens and precludes their access to life saving vaccinations.

57.     It is indisputable that Defendants have no viable empirical data to preclude such a vulnerable and protected class from obtaining ***priority*** vaccinations, specifically when Defendants have earmarked special COVID-19 access to grocery stores to Nevada's elderly population at the inception of the pandemic measures, knowing this classes vulnerability.

58.     Defendants have further engaged in negligent administration of the vaccines with a reckless disregard to the elderly population by hoarding the vaccines distributed to the State and failing to efficiently and productively vaccinate this population group.

59.     Defendants, collectively, continue to engage in a pattern of dubious excuses as to why the vaccinations received by the State of Nevada have not been distributed in an efficient or life-saving manner.

///

///

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE
### FOURTEENTH AMENDMENT
### (*Against All Defendants*)

60.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

61.     The Equal Protection Clause (EPC) of the 14th Amendment declares that "No State… shall deny to any person within its jurisdiction the equal protection of the laws." This guarantee of equal protection is one of the most profound and important statements in the American Constitution.

62.     The right to medical treatment by Nevada's elderly population is a "suspect classification" as to the fundamental right of life, preservation of life and prolonging life.

63.     Defendants establishment of an arbitrary Tier system preventing the elderly population from obtaining the vaccinations is not based on a compelling state interest.

64.     Defendants' arbitrary Tier policy is not narrowly tailored to meet such a compelling government interest.

65.     Defendants arbitrary Tier policy is not the least restrictive means of meeting the State's interest in protecting the elderly population.

66.     It is clear that distribution of the vaccine to the elderly population is the only option of protecting this age group, prolonging and preserving their lives, such that no other viable alternative method for achieving this interest exists.

67.    Defendants cannot satisfy strict scrutiny, because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

68.    All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

69.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and arbitrarily distributing the vaccines received.

70.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders.

71.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF FOURTEENTH AMENDMENT PROCEDURAL DUE**
**PROCESS RIGHTS**
***(Against All Defendants)***

72.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

73.    Plaintiffs are entitled to constitutional protection for certain rights or "liberty interests" related to privacy under the Due process clause of the Fourteenth Amendment.

74.    Plaintiffs' right to privacy under the Fourteenth Amendment includes the right to medical treatment and maintain bodily integrity. *See Washington v. Harper, 494 U.S. 210, 221-22 (1990) and Winston v. Lee, 470 U.S. 753, 766-67 (1985).*

75.    The Constitution protects Plaintiffs' freedom of choice in medical care, including the right to refuse or receive medical treatment and rights preserving the doctor-patient relationship.

76.    Plaintiffs' have a constitutionally protected liberty interest in their own medical autonomy, especially when those interests are secured by state laws.

77.    Defendants cannot satisfy strict scrutiny, because their arbitrary Tier systems are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

78.     All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

79.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing these Tier systems and precluding vaccinations.

80.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Tier systems.

81.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF EIGHTH AMENDMENT PROHIBITION
### AGAINST CRUEL AND UNUSUAL PUNISHMENT
### *(Against All Defendants)*

82.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

83.    The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

84.    Defendants have violated Plaintiffs' Eighth Amendment rights by demonstrating a deliberate indifference to a known, substantial risk of serious harm in violation of clearly established Eighth Amendment rights of which a reasonable person would have known, given the Supreme Court's decisions proscribing the deprivation of medical care to vulnerable and elderly populations.

85.    Defendants' policies to delay and to deny care have been intentionally promulgated and executed for financial, political and arbitrary reasons in complete disregard for the medical needs of Plaintiffs and those similarly situated.

86.    Defendants' policies and arbitrary Tier structure was not promulgated on the basis of legitimate differences in medical opinion but solely on the basis of political, social and economic considerations and in disregard of the serious medical needs of the elderly population and Plaintiffs herein.

87.    Defendants were, at all relevant times, employed by the State of Nevada and acted under color of law to deprive Plaintiffs' constitutionally protected rights including, but not

limited to, the right to be free of cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

88.     As alleged herein and above, Defendants' failure to provide Plaintiffs the COVID 19 vaccines constitutes a violation of Plaintiffs Eighth Amendment rights because Defendants are denying and delaying treatment with deliberate indifference to Plaintiffs' serious medical needs.

89.     All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

90.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing these Tier systems and precluding vaccinations.

91.      Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Tier systems.

92.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

///

///

///

**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF THE NEVADA CONSTITUTION**
**ARTICLE I DECLARATION OF RIGHTS**
(*Against All Defendants*)

93.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein

94.     Since 1864, the Nevada Constitution has provided intrinsic and unalienable rights and liberties to its citizens.

95.     Chief among those rights and liberties are those found in Article 1 of the Nevada Constitution.

96.     Article 1, §1 of the Nevada Constitution provides, in pertinent part: "[A]ll men are by Nature free and equal and have certain inalienable rights among which are those of enjoying and defending life and liberty; Acquiring, Possessing and Protecting property and pursuing and obtaining safety and happiness[.]

97.     Similarly, Article I, §8 provides No person shall be deprived of life, liberty, or property, without due process of law.

98.      Defendants' arbitrary allocation of vaccines according to arbitrary Tiers and prevention of vaccinations have interfered with Plaintiffs' rights and liberties as set forth under Article 1, §1 of the Nevada Constitution.

99.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing this arbitrary Tier vaccine allocation.

100.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are entitled to an award of attorney's fees thereon.

**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF THE NEVADA CONSTITUTION**
**Right to Life (Nev. Const. Art. 1, § 8)**
**(*Against All Defendants*)**

101.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

102.    Article 1, Section 8 of the Nevada Constitution provides, in pertinent part: "No person shall be deprived of life, liberty, or property, without due process of law. "

103.    Plaintiffs have a constitutional right to prolonged life through medical treatment, including receiving vaccinations located in the State of Nevada for distribution to preserve said life.

104.    Defendants have precluded Plaintiffs from receiving medical treatment that preserves and prolongs their life.

105.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing the arbitrary Tier system which prevents their vaccinations.

106.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorney fees and costs thereon.

**REQUESTED RELIEF**

WHEREFORE, Plaintiffs respectfully prays that this Court grant the following relief.

1.     An immediate hearing on Plaintiffs' Motion for Temporary Restraining Order, and, upon hearing, enter an Order restraining Defendants from further withholding vaccinations to the Elderly Communities of the State of Nevada.

2.     Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants from dilatory distribution and use of the vaccines.

3.     Issue a TRO and a preliminary injunction preventing Defendants from enforcing or implementing their arbitrary Tiered vaccine program until this Court decides the merits of this lawsuit.

4.     Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants from enforcing the allocation of vaccines in accordance with their Tier program unless they comply with all procedural and substantive due process requirements of the U.S. Constitution.

5.     Award Plaintiffs damages arising out of their Section 1983 Claims, and

6.     For an award of reasonable attorney's fees and his costs on his behalf expended as to such Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. Section 1988.

7.     Such other relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury on all counts so triable.

Dated this __11th__ day of January, 2021

CHATTAH LAW GROUP


*/s/ Sigal  Chattah*
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
Attorney for Plaintiffs