SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MICHAEL KREPS, an individual,<br>PAULA KELESIS, an individual<br>DANNY ITZHAKI, an individual,<br>NATALIE HETLY, and individual<br>on behalf of itself and all<br>others similarly situated<br><br>        Plaintiff,<br><br>    vs.<br><br>STEPHEN F.SISOLAK, in his official capacity<br>as Governor of the State of Nevada, AARON<br>DARNELL FORD, in his official capacity as<br>Attorney General of the State of Nevada, IHSAN<br>AZZAM, in his capacity as Nevada Chief<br>Medical Officer, NEVADA DEPARTMENT OF,<br>HEALTH AND HUMAN SERVICES, a Nevada<br>Administrative Agency, DOES 1 through 100<br><br>        Defendants. | **Case No: 2:21-cv-00052-JCM-EJY**<br><br>**PLAINTIFFS<br>EMERGENCY MOTION<br>FOR PRELIMINARY<br>INJUNCTION** |

## DECLARATION OF SIGAL CHATTAH, ESQ. PURSUANT TO LR 7-4

I, SIGAL CHATTAH, declare as follows:

1.    I am a licensed attorney in the State of Nevada since 2002 and a member of good standing with the State Bar of Nevada.

2.    I am Plaintiffs' Counsel in the matter sub judice and licensed to practice in all Courts of the State of Nevada.

3.    The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I would and could competently do so under oath.

4.    The matter sub judice involves the arbitrary and delayed distribution of COVID-19 vaccines, ignoring the vulnerable elderly population in the State of Nevada

5.    ON January 12, 2021, CDC Guidelines were expanded to coronavirus vaccine eligibility to everyone age 65 and older as well as to those with comorbid conditions, like diabetes.[1]

6.    Movants herein are four individuals, on behalf of themselves and similarly situated Plaintiffs who seek to receive preferential vaccinations due to the CDC guidelines classifying members of the 65 years of age and up demographic as a vulnerable segment of the population as a result of comorbidities and higher death rates.

_____

[1] https://www.cdc.gov/vaccines/acip/meetings/downloads/slides-2020-12/slides-12-20/02-COVID-Dooling.pdf

2

7.     That Defendants have prioritized and given preference to individuals with low risk of comorbidities and serious complications by virtue of their profession and have ignored the vulnerable demographic of the State of Nevada.

8.     That Plaintiffs seek an Order from this Court, instructing Defendants to prioritize Senior Citizens and Elderly, of the ages of 65 years old and higher to be provided preferential vaccinations over all other demographics in the State based on profession or risk of transmission.

9.     That due to the exigency in the distribution of vaccines and constitutional violations and implications herein, it is simply impracticable to contact each administrator and Defendant involved in this action. Notwithstanding same, service of process of the Complaint, and the following Emergency Motion for Preliminary Injunction will be personally served upon Defendants upon filings or shortly thereafter.

10.    These are the facts as I know them to be true.

11.    Under NRS 53.045, I declare under penalty of perjury that the foregoing is true and correct.


 /s/ __SIGAL CHATTAH___
Declarant
SIGAL CHATTAH, ESQ.

1

**<u>TABLE OF CONTENTS</u>**

2  TABLE OF AUTHORITIES ................................................... 5-8

3  I.    MOTION FOR PRELIMINARY INJUNCTION…………………………………..9-34

4  II.   JURISDICTION ……………………………………..…………………………..9

5  III.  STATEMENT OF FACTS ...................................................10-18

6  IV.   LEGAL ARGUMENT ........................................................19-34

7

8          A.  ISSUE OF FIRST IMPRESSION

9          B.  STANDARD FOR INJUNCTION

10              1.  *Likelihood of Success on the Merits*

11         C.  DEFENDANTS CONSTITUTIONAL VIOLATIONS

12              1.  *Eighth Amendment Violation*

13

14              2.  *Right to Privacy*

15         D.  PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE HARM

16         E.  BALANCE OF EQUITIES FAVORS PLAINTIFF

17         F.  INJUNCTION IS IN THE PUBLIC INTEREST

18  V.    CONCLUSION………………………………………………………………….35-37

19

20

21

22

23

24

25

26

27

28

1

2

**TABLE OF AUTHORITIES**

**CASES**                                                                 **PAGE(S)**

*Aces Enterprises LLC v Edwards 0:20-cr-30526*                                    19

*Adams and Boyle, P.C. v Slatery, 0:20-cv-00705*                                  19

*Adrian School District Board v. Gill; 20CV31597*                                19

*Am. Trucking Ass'ns v. City of Los Angeles,*                                     23
*559 F.3d 1046, (9th Cir. 2009)*

*Barber v. Superior Court, 147 Cal.App.3d 1006 (1983)*                           32

*Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014)*                       34

*Brown v. Plata, 131 S. Ct. 1910 (2011)*                                     20, 33

*Calvary Chapel Dayton Valley v Sisolak, 591 U.S. ___(2020)*                     19

*Carey v. Population Servs. Int'l, 431 U.S. 678 (1977)*                          32

*Clements v airport Authority of Washoe County, 69 F.3d 321 (9th Cir. 1995)*     22

*Cruzan v. Director, Missouri Department of Health, 497 U.S. 261 (1990)*         32

*Edge v. City of Everett, 929 F.3d 657 (9th Cir. 2019)*                          21

*Elrod v. Burns, 427 U.S. 347 (1976)*                                           32

*Estelle v Gamble, 429 U.S. 97 (1976)*                                        23,24

*Ex Parte Young, 209 U.S. 123 (1908)*                                            9

*Farmer v. Brennan, 511 U.S. 825 (1994)*                                         24

*Fields v. Palmdale School Dist., 427 F.3d 1197 (9th Cir. 2005)*                 32

*Free the Nipple v, City of Ft. Collins, Colo, 916 F.3d 792 (2019)*             33

*Gibson v. Cnty. of Washoe, 290 F.3d 1175 (9th Cir. 2002)*                       25

*Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114 (10th Cir. 2013)*          34

*Int'l Molders' & Allied Workers' Local Union v. Nelson,*                        21
*799 F.2d 545 (9th Cir. 1986)*

*In re Baby K, 16 F.3d 590 (4th Cir. 1994)* — 32

*In Re Quinlan (1975) 70 N.J. 10, 355 A. 2d 647 (NJ 1976))* — 32

*Jacobson v. Massachusetts, 197 U.S. 11 (1905)* — 34

*Jett v. Penner, 439 F.3d 1091 (9th Cir. 2006)* — 24

*Jones v. Johnson, 781 F.2d 769 (9th Cir. 1986)* — 27

*LaMarca v. Turner, 995 F.2d 1526 (11th Cir. 1993)* — 27

*Mann v. Adams, 855 F.2d 639 (9th Cir. 1988)* — 25

*Marsh v. County of San Diego, 680 F.3d 1148 (9th Cir. 2012)* — 32

*Morrison Road Corp v. Tri-County Health Dept 2020-cv-31347* — 19

*McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1992)* — 24,25

*NRDC v. Winter, 555 U.S. 7 (2008)* — 21

*Prince v. Massachusetts, 321 U.S. 158 (1944)* — 34

*Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003)* — 25

*Roe v. Taber, 410 U.S. 113  (1973)* — 32

*Roe v Wade, 410 U.S. 113, (1973)* — 10,32

*Roman Catholic Diocese of Brooklyn New York, v Andrew M. Cuomo, Governor of New York, 592 U.S. ____(2020)* — 19

*Spain v Procunier 600 F.2d 189 (9th Cir. 1979)* — 21,27

*South Bay United Pentecostal Church v Newsom*, 590 U.S. __(2020) — 19

*Shanks v Dessel, 540 F.3d 1082 (9th Cir. 2008)* — 22

*Sierra Forest Legacy v. Rey, 577 F.3d 1015 (9th Cir. 2009)* — 23

*Snow v. McDaniel, 681 F.3d 978 (9th Cir. 2012)* — 27

*Sw. Voter Registration Educ. Project v. Shelley, 344 F.3d 914 (9th Cir. 2003)* — 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| *Timbs v Indiana, 139 S. Ct. 682; 203 L. Ed. 2d 11 (2019)* | 22 |
| *United States v. California, 921 F.3d 865 (9th Cir. 2019)* | 32 |
| *Washington v. Glucksberg, 521 U.S. 702 (1997)* | 32 |
| *Watson v. City of Memphis, 373 U.S. 526 (1963)* | 28 |
| *Whalen v. Roe, 429 U.S. 589 (1977)* | 32 |
| *Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008)* | 20,32 |
| *Will v. Mich. Dep't of State Police, 491 U.S. 58, (1989)* | 20,33 |
| *Wilson v. Seiter, 501 U.S. 294 (1991)* | 25 |
| *WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)* | 24 |
| *Wright v. Rushen, 642 F.2d 1129, 1134 (9th Cir. 1981)* | 28 |

**STATUTES**

A.     42 U.S.C. §1983

B.     U.S. Const. Amends. I, VIII, XIV

**URL SOURCES**

1.     https://worldpopulationreview.com/states/nevada-population

2.     https://www.vox.com/2021/1/14/22215896/israel-vaccine-coronavirus-pfizer-netanyahu

3.     https://www.thelocal.it/20210115/italy-has-vaccinated-almost-one-million-people-against-covid-19

4.     https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm

5.     Association for Professionals in Infection Control and Epidemiology; apic.org/monthly_alerts/herdimmunity/?gclid=CjwKCAiAgJWABhArEiwAmNVTB5Evtyv M1WX2J3vcUFqimsXhvfav-1pv3Hfg2QhEZ51TKEnhOyv1FBoCxZMQAvD_BwE

6.     https://www.jhsph.edu/covid-19/articles/achieving-herd-immunity-with-covid19.html

7.      https://www.rgj.com/story/news/2021/01/15/reno-municipal-court-judges-jump-line-covid-19-vaccinations/4178058001/

8.      Fox5vegas.com/coronavirus/new-frustrations-over-vaccine-appointment-availability-in-southern-nevada/article_e0b7625a-5793-11eb-9f50-fb85f5baf27e.html?block_id=1002851

## MISC. SOURCES

Empirically Testing Dworkin's Chain Novel Theory: Studying the Path of Precedent, 80 NYU L. Rev. 1156 (2005) [Path of Precedent].

*See* BLACK'S LAW DICTIONARY 243 (9th ed. 2004)

**MOTION FOR PRELIMINARY INJUNCTION**

COME NOW, PLAINTIFFS, MICHAEL KREPS ET AL, by and through the undersigned attorneys of record, SIGAL CHATTAH, ESQ., of the CHATTAH LAW GROUP, and pursuant to Fed. R. Civ. Pro. 65, hereby move this Court for a preliminary injunction against Defendants, to enjoin them from dilatory and arbitrary distribution of the COVID-19 vaccines to individuals identified by the Centers for Disease Control & Prevention as vulnerable sector of the population, to wit: 65 years of age and older.

The purpose of this motion made on an emergency basis, given the fact that it has been over one month since Defendants received COVID-19 vaccines, and have continuously failed to distribute vaccinations in an expedited manner to the vulnerable population in Nevada. Defendants failed to create an expedient infrastructure for mass vaccination and have engaged in a bad faith prioritization of distribution of the vaccine that lacks empirical, scientific and medical data for same.

The failure to distribute the vaccine in an expedited manner to Nevada's senior and elderly population, with highest rates of comorbidities is a violation of the Eighth Amendment right against cruel and unusual punishment.

Plaintiffs' Motion is based upon the pleadings and papers on filed herein, the Exhibits attached and Declarations filed concurrently herewith, and the following points and authorities.

**JURISDICTION**

This court has subject matter jurisdiction over Plaintiffs' claims arising under federal law pursuant to 42 U.S.C. §1983. Plaintiffs further allege that the exercise of this court's jurisdiction over such claims is proper under the rule of *Ex Parte Young*, *209 U.S. 123 (1908)* (plaintiff alleging violation of federal law may seek prospective injunctive relief against responsible state official).

**STATEMENT OF FACTS**

On May 15, 2020, United States President Donald J. Trump, announced a public-private initiative named Operation Warp Speed (OWS) to facilitate and accelerate the development, manufacturing, and distribution of COVID-19 vaccines, therapeutics, and diagnostics.

The program promoted mass production of multiple vaccines, and different types of vaccine technologies, based on preliminary evidence, allowing for faster distribution if clinical trials confirm one of the vaccines is safe and effective.  In October 2020, Alex Azar predicted 100 million available doses by the end of the 2020 year.

On or about October 29, 2020, Defendants DHHS issued a roadmap for vaccination in Nevada labeled, Vaccination Planning Assumptions for Jurisdictions which continues to be updated from time to time.

On November 9, 2020, the Pfizer-BioNTech partnership announced positive early results from its Phase III trial of the BNT162b2 vaccine candidate, and on December 11, 2020 the FDA provided emergency use authorization, initiating the distribution of the vaccine followed by the Centers for Disease Control and Prevention (CDC)'s recommendation for use, clearing the way for delivery and administration of the vaccine throughout the United States.

Vaccine doses purchased by Operation Warp Speed were sent from manufacturers via UPS and FedEx to locations specified by state governments.  The Federal Pharmacy Partnership delivered doses to CVS and Walgreens locations, which then send pharmacists for mass vaccinations at care facilities like nursing homes.

Defendant IHSAN AZZAM, Nevada's Chief Medical Officer provides direction for the State's immunization program which commenced in November, 2020, with the plan to distributed the vaccines upon arrival in the State of Nevada. While COVID-19 vaccines were

issued to the State of Nevada in limited supply, distribution was to be determined in direct

proportion to the nation's adult population 18 years and older.  The pro rata method was

approved on Nov. 6, 2020, by United States Health and Human Services Secretary Alex

Azar.

On January 11, 2021, Defendants issued a statement discussing the roll out of a new

Once vaccines were allocated, it was up to each State's jurisdiction or agency to place

orders, designate delivery points, prioritize recipients and administer vaccines to the American

people.

On January 11, 2021, Defendants issued a statement discussing the roll out of a new

phased vaccination program, modifying the Tier system provided in the original Complaint on

file herein. The designation of "lanes" provides a hierarchy of prioritization as follows:



According to the US National Library of Medical & National Institutes of Health elderly[2] patients with COVID-19 indicated relatively higher proportion of comorbidities, and the most common were atherosclerotic cardiovascular disease (56.5%), hypertension (43.5%) and chronic pulmonary disease (21.7%). The proportion of severe cases was higher in elderly group than that in non-elderly group (73.9% and 42.2%, respectively).

During hospitalization, elderly patients indicated relatively higher proportion of complications, such as shock (21.7%), respiratory failure (21.7%). The proportion of patients with a decreased number of CD8+ lymphocytes (82.6%) and B lymphocytes (77.8%) in elderly patients is found to be significantly higher than that in non-elderly groups (48.9% and 44.8%, respectively).

Elderly patients with COVID-19 had a high proportion of severe cases and comorbidities, more likely to show low immune function, and indicate higher proportion of complications. According to the CDC, 8 out of 10 COVID deaths reported in the US have been in adults 65 or older.

Based on the CDC guidelines, adults of any age with the following conditions might be at an increased risk for severe illness from the virus that causes COVID-19:

    Asthma (moderate-to-severe)
    Cerebrovascular disease (affects blood vessels and blood supply to the brain)
    Cystic fibrosis
    Hypertension or high blood pressure
    Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines
    Neurologic conditions, such as dementia
    Liver disease
    Overweight (BMI > 25 kg/m$^2$, but < 30 kg/m$^2$)

_____

[2] Elderly patients are those over the age of 60 years old and non-elderly group under 60 years old.

Pulmonary fibrosis (having damaged or scarred lung tissues)
Thalassemia (a type of blood disorder)
Type I Diabetes

On December 13, 2020, Sisolak announced that due to the rising cases of COVID-19, the Statewide pause would be extended to January 15, 2021. On January 11, 2021, this was extended an additional 30 days.

On or about December 15, 2020, Nevada began receiving doses of the vaccines distributed by Pfizer- BioNtech and Moderna for distribution through the State's established program. As of the date of this Motion for Preliminary Injunction, there is a confirmed count of over 250,000.00 COVID-19 cases in Nevada according to the State's metrics published by Nevadahealthresponse.nv.gov., with 21 daily deaths published by same.

The illustration below demonstrates the numbers of issued by Defendants' Administration. As the measures rise, Defendants, despite having over 150,000 vaccines two weeks ago, failed to distribute them in an expedited and efficient manner causing unnecessary deaths to Nevada resident.



On December 13, 2020, Sisolak announced that due to the rising cases of COVID-19, the Statewide pause would be extended to January 15, 2021. On January 11, 2021, this was extended an additional 30 days.

On or about December 15, 2020, Nevada began receiving doses of the vaccines distributed by Pfizer- BioNtech and Moderna for distribution through the State's established program.

As of the date of this Motion for Preliminary Injunction, there is a confirmed count of over 250,000.00 COVID-19 cases in Nevada according to the State's metrics published by Nevadahealthresponse.nv.gov., with 19 daily deaths published by same. Approximately over 3,500 people in Nevada have died from coronavirus since March, 2020.  Of this population, more than 2,500 of them were over 70; More than 600 were ages 60 to 69. Among those under 40, fewer than 200 have passed away.  Nevada's current positivity rate stands at 21%.

Despite having access to the subject empirical and medical data, Defendants deliberately and with an utter disregard for such empirical data, created an arbitrary and capricious Tier system, which was substituted by an even more arbitrary lane system, that discriminates against a vulnerable and protected class of citizens and precludes their access to life saving vaccinations.

It is indisputable that Defendants have no viable empirical data to preclude such a vulnerable and protected class from obtaining ***priority*** vaccinations, specifically when Defendants have earmarked special COVID-19 access to grocery stores to Nevada's elderly population at the inception of the pandemic measures, knowing this class' vulnerability.

Defendants have further engaged in negligent administration of the vaccines with a reckless disregard to the elderly population by hoarding the vaccines distributed to the State and failing to efficiently and productively vaccinate this population group. Defendants,

14

collectively, continue to engage in a pattern of dubious excuses as to why the vaccinations received by the State of Nevada have not been distributed in an efficient or life-saving manner.

Following the filing of the First Complaint in this action, Defendants modified the vaccination plan, alleging that the State will be prioritizing our senior population with a goal that no doses of the vaccines go to waste. According to Defendants, the vaccines will be distributed equitably, utilizing Defendants identifying challenges and correcting the previous course- by working Division of Emergency Management, Nevada national guard and state immunization team (who can give a vaccine).

On January 11, 2021, Defendants reiterated a slew of excuses as to why Nevada's vaccination rates were low including the following

- Waiting for stimulus package included more funding for state vaccination programs
- How many doses are allocated to Nevada, putting state and local vaccination teams in unpredictable positions
- Looking toward the incoming (Federal) administration to provide a unified policy regarding vaccination

Deferring to Shannon Bennett, Nevada State Immunization Program Manager at STATE OF NEVADA DIVISION OF PUBLIC AND BEHAVIORAL HEALTH, Defendants reiterated irrelevant and misleading facts such as claiming that Nevada's allocation is low.

According to the CDC Vaccine and Distribution numbers updated on January 13, 2021, Nevada received more doses than, Alaska, Delaware, Hawaii, Idaho, Montana, North Dakota, Nebraska, New Hampshire, New Mexico, Rhode Island, South Dakota, Vermont, West Virginia and Wyoming while using less than 10% -30% less than the vaccinations allocated to the State

Ms. Bennett pointed to Nevada's low allocation of dosages, and limit of supply as a justification of a failure to mass vaccinate as needed. Ms. Bennet further provided that while both the Pfizer-BioNtech and Moderna vaccines can remain stable for 6 months in frozen state, Moderna is stable 30 days after a thawed state. Both vaccines must be used within 6 hours after vial is punctured. Yet Defendants failed to provide any analysis as to why the vaccine distribution system was not contemplated, when in October, 2020, knowledge of a vaccine rollout was prevalent among Governors across the Country.

Defendants further failed to provide any explanation to the public, why mass vaccination sites could not be set up immediately, despite having three months to prepare the State for vaccine distribution. Had Defendants engaged in a competent and coordinated effort, the State of Nevada could be vaccinated no different than world countries as the percentage of vaccinations in the chart below.

For example, Defendants can utilize medical professionals in geriatric care, unemployed school nurses with the Clark County School District, point to point pharmacies and general practitioners to vaccinate Nevadans through a simple vaccination program. It is clear by the deliberate and wanton disregard for the health and well-being of Nevadans, that Defendants continue to perpetuate excuses for such failures and push a political agenda that only harms Nevada's residents.

On January 15, 2021, it became clear that Defendants would be reprioritizing vaccination demographics to include, employees of Clark County School District, Government employees and other preferential groups based on profession rather than risk of death, transmission or comorbidities.



Share of people that have received at least one dose of the COVID-19 vaccine, Jan 13, 2021

Share of the total population that have received at least one vaccine dose. This may not equal the share that are fully vaccinated if the vaccine requires two doses.

Source: Official data collated by Our World in Data – Last updated 13 January, 20:10 (London time)    OurWorldInData.org/coronavirus • CC BY

As seen, Israel leads the vaccination rate with 22% percent of its population vaccinated by January 13, 2020. Israel, on average vaccinates 150,000 people daily. Israel leads the world in vaccination rate per capita. It's been less than a month since its vaccination campaign began on December 19, and more than 20 percent of the country's population of about 9 million have already gotten the first dose of the Covid-19 vaccine as of January 14.  In total, it's about 2 million people. Priority went to people over 60 and health workers; however, in an attempt to avoid wasting any shots that might spoil. [3] Likewise, between December 27, 2020 and January 15th, a total of 972,099 vaccinations are reported as having

_____

[3] https://www.vox.com/2021/1/14/22215896/israel-vaccine-coronavirus-pfizer-netanyahu

17

been administered to people in Italy, or 69 percent of the doses that had been delivered by that date, vaccinating over 54,000 people daily. [4]

Countries like Italy and Israel are a model of distribution of the vaccines received, unlike Defendants who sat on over 100,000 vaccines for weeks until they trickled out to preferential persons, ignoring the vulnerable population. It is inconceivable how Defendants are incapable of vaccinating Nevadans despite the utilization and partnerships with the Nevada National Guard, Division of Emergency Management and Nevada's "immunization team". It is abundantly clear that the valuable commodity of Pfizer-BioNtech and Moderna vaccines will not be wasted on a State and Defendants that refuse to utilize them and vaccinate the resident of the State of Nevada.

Common sense dictates that, States that utilize the vaccines and vaccinate their population, will be replenished and provided for more vaccines, by the Pharmaceutical companies, not States that hoard them. Ultimately, even if Nevada was provided with 1,000,000 vaccines, the public would not receive them because Defendants are recklessly withholding their distribution to the public.

On January 15, 2021, it became clear that Defendants would be reprioritizing vaccination demographics to include, employees of Clark County School District, Government employees and other preferential groups based on profession rather than risk of death, transmission or comorbidities. This deliberate indifference to provide access to medical

---

[4] https://www.thelocal.it/20210115/italy-has-vaccinated-almost-one-million-people-against-covid-19

care *i.e.,* COVID-19 vaccines to Nevada's elderly is a blatant violation of the Eighth Amendment right against Cruel and Unusual punishment.

## LEGAL AUTHORITY

### A.    ISSUE OF FIRST IMPRESSION

This case presents an issue of first impression. In a common law system based on the evolution of judicial precedent,[5] this phrase has power. It suggests an elusive situation that has somehow evaded the courts, or an important event never seen before by judges. Definitionally, it means an absence of controlling precedent, such that a court must use persuasive authority or some other analytical technique to answer the question before it.[6]

As the legal challenges relating to State Governments' responses to the COVID-19 pandemic and the effect of civil liberties during this fluid period, there were no precedents on certain matters effecting said civil liberties until the Courts issued a variety of opinions regarding same. *See Aces Enterprises LLC v. Edwards 0:20-cr-30526; 842 Morrison Road Corp. v. Tri-County Health Department 2020CV31347 Adams and Boyle, P.C. v. Slatery 3:15-cv-00705; Adrian School District Board v. Gill; 20CV31597 Roman Catholic Diocese of Brooklyn New York, v Andrew M. Cuomo, Governor of New York, 592 U.S. ____(2020). Calvary Chapel Dayton Valley v Sisolak*, 591 U.S. ___(2020); *South Bay United Pentecostal Church v Newsom*, 590 U.S. __(2020).

---

[5] Empirically Testing Dworkin's Chain Novel Theory: Studying the Path of Precedent, 80 NYU L. Rev. 1156 (2005) [Path of Precedent].

[6] *See* BLACK'S LAW DICTIONARY 243 (9th ed. 2004) (defining "case of first impression" as: "A case that presents the court with an issue of law that has not previously been decided by any controlling legal authority in that jurisdiction."); see also Path of Precedent, 80 NYU L. Rev. at 1129 ("A case of first impression is, by definition, one that presents a novel legal question and is not ruled by prior precedent."). No case surveyed by this article defined the term.

This fraction of cases that dealt with matters such as First Amendment religious rights, Fifth Amendment due process and the takings and various other constitutional questions have forced courts across the nation to issue decisions on matters of first impression that remain unprecedented in this Country.

This case joins that list of issues of first impression on the basis that never has this Court been placed in the position of treating the medical needs of a vulnerable sector of the population in the position that this pandemic has placed them.

As this issue of first impression arises, it is incumbent on this Court to draw a parallel to another type of vulnerable population, whose rights and access to medical care is protected; *ergo* prison inmates and their eighth amendment rights against cruel and unusual punishments.

Although prisoners can't sue states for monetary relief, they can sue for injunctions to correct unconstitutional prison conditions. *See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 & n.10 (1989); see also Brown v. Plata, 131 S. Ct. 1910 (2011).* If the state provided insufficient resources to accord inmates adequate medical care, it could be compelled to correct those conditions. *See Brown v Plata, 131 S. Ct. 1910 (2011); Spain v Procunier, 600 F.2d 189. (9th Cir. 1979).* But such a lawsuit could provide no redress for past.

The crux of this case parallels the relief that can be requested by prisoners regarding unconstitutional prison conditions, and access to adequate medical care and requests this Court to compel Defendants to correct these conditions as delineated *infra*.

**B.      STANDARD FOR INJUNCTION**

A motion for a preliminary injunction is governed by the multi-factor test outlined by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).* Under the *Winter* test, the plaintiff has the burden to establish: (1) likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable harm if the

preliminary injunction is not granted; (3) that the balance of equities favors the plaintiff; and (4) that the injunction is in the public interest. *Id.* Likelihood of success on the merits is a threshold inquiry and the most important factor. *See, e.g., Edge v. City of Everett, 929 F.3d 657, 663 (9th Cir. 2019).*

Alternatively, a court may grant the injunction if the plaintiff demonstrates either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor. *NRDC v. Winter, 518 F.3d at 677 (internal citations omitted).*[7]

In our circuit, there is no presumption that the issuance of a preliminary injunction requires an evidentiary hearing. *See Int'l Molders' & Allied Workers' Local Union v. Nelson, 799 F.2d 547, 555 (9th Cir. 1986).*

Review a grant of a preliminary injunction for abuse of discretion. *See, e.g., United States v. California, 921 F.3d 865, 877 (9th Cir. 2019).* "The district court's interpretation of the underlying legal principles, however, is subject to de novo review and a district court abuses its discretion when it makes an error of law." *Sw. Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003) (en banc).*

---

[7] Justice Ginsburg penned an eloquent dissent in *Winter,* where, among other things, she addressed the question of whether the majority opinion eviscerated a court's ability to issue an injunction when the likelihood of irreparable harm was less than clear: Consistent with equity's character, courts do not insist that litigants uniformly show a particular, predetermined quantum of probable success or injury before awarding equitable relief. Instead, courts have evaluated claims for equitable relief on a "sliding scale," sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high.... This Court has never rejected that formulation, and I do not believe it does so today. *Id. at 392 (Ginsburg, J. dissenting) (internal citations omitted).*

1

### 1.    Likelihood of Success on the Merits

2

Plaintiffs are likely to prevail on the merits, or at least have raised a serious question to

3

the merits of their procedural and substantive due process claims against Defendants.

4

To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must show the deprivation of

5

a federal right by a person acting under color of state law.  The Eighth Amendment provides

6

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

7

punishments inflicted." .U.S. Const. Amend. VIII.   The Eighth Amendment applies to the

8

States by virtue of the Fourteenth Amendment.  *Timbs v Indiana, 139 S. Ct. 682; 203 L. Ed.*

9

*2d 11 (2019).*

10

The Governor's restriction on distribution of COVID- 19 vaccines is a deliberate

11

indifference to serious medical needs to Nevada's most vulnerable population, individuals

12

over the age of 65.

13

The Ninth Circuit has repeatedly stated that "[t]o obtain relief on a procedural due

14

process claim, the plaintiff must establish the existence of (1) a liberty or property interest

15

protected by the constitution; (2) a deprivation of the interest by the government; 3) lack of

16

process."  *See Shanks v Dessel, 540 F.3d 1082, 1090 (9th Cir. 2008).*

17

Procedural due process concerns are not satisfied simply by providing notice and a

18

hearing. The Ninth Circuit has firmly ruled that procedural due process is violated when an

19

adjudicative decision maker deprives a person of protected property interests on the grounds

20

of bias, prejudice, partiality, or maliciousness, regardless of whether there was notice and/or a

21

hearing.  *Clements v Airport Authority of Washoe County, 69 F.3d 321, 333 ( 9th Cir. 1995).*

22

In *American Trucking Associations v. City of Los Angeles*, the Ninth Circuit

23

referenced *Winter* in its application of the traditional test and held that "as the Court

24

explained, an injunction cannot issue merely because it is possible that there will be an

25

26

27

28

irreparable injury to the plaintiff; it must be likely that there will be." *See Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (emphasis added).*

The Supreme Court made clear in *Winter* that the balancing of harms, and review of the public interest, must occur in the context of the specific relief requested. *Winter v. Natural Res. Def. Council (Winter), 129 S. Ct. 365, 376 (2008).* This approach was applied by the Ninth Circuit in *Sierra Forest Legacy v. Rey*, when it overturned a district court's denial of preliminary injunctive relief for failure to analyze the balancing of harms and public interest in the context of the narrow injunction requested by environmental plaintiffs. *Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1022–23 (9th Cir. 2009) (citations omitted) ("When deciding whether to issue a narrowly tailored injunction, district courts must assess the harms pertaining to injunctive relief in the context of that narrow injunction.").*

## C.  DEFENDANTS' ARBITRARY ALLOCATION AND WITHOLDING OF COVID-19 VACCINES IS A VIOLATION OF THE EIGHTH AMENDMENT

While the State of Nevada has never been placed in a position to control dispensation of medical care through provision of vaccines during a pandemic; The State denying access to COVID-19 vaccines to a vulnerable class of residents and providing arbitrary preferential treatment to others should be viewed as no different than a prison denying an inmate medical care. This case should be examined according to the same legal standards as there are no differences between the State withholding medical care to a vulnerable sector of the population and the State withholding medical treatment to inmates.

In *Estelle v Gamble, 429 U.S. 97, 103 (1976)*, the United States Supreme Court confirmed that the Constitution created a duty for prison staff to provide medical care for prisoners because they ***could not independently meet their own needs*** *Id.* The Court stated "[I]t is but just that the ***public be required*** to care for the prisoner, who cannot by reason of

the deprivation of his liberty, care for himself."[*Emphasis added*]. In *Estelle*, the Court noted "[t]he infliction of such unnecessary suffering is inconsistent with contemporary standards of decency. *Id.*

The Supreme Court in *Estelle* also taught us that particular conditions in prisons have also been found to violate the Eighth Amendment when they cause pain for no reason or serve no legitimate end. *Estelle, 429 U.S. at 103*. Here the fact that Defendants continue to fail to serve Nevada's vulnerable population, contributing to the death and hospitalization of this sector of the population serves no legitimate end other than a deliberate indifference to their life.

> **1.    Defendants' Deliberate Indifference in Distribution of Vaccines Over the Course of One Month Continues to Cause an Unnecessary Burden on Nevada's HealthCare System and Contributes the Uptick in Mortality of this Vulnerable Class of Over 65 years of Age**

Government *[Prison]* officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble, 429 U.S. 97, 104 (1976)*. A medical need is serious if failure to treat it will result in "'significant injury or the unnecessary and wanton infliction of pain.'" *Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).* A prison official is deliberately indifferent to that need if he "knows of and disregards an excessive risk to inmate health." *Farmer v. Brennan, 511 U.S. 825, 837 (1994)*.

Once an objective harm is shown, a prisoner must demonstrate the prison official acted with a sufficiently culpable mindset, meaning he or she was deliberately indifferent to the serious condition."  The importance of the mindset requirement is definitional. To be

"punishment" under the terms of the Eighth Amendment, there must be some level of intentionality *See id. at 837-38*

 Deliberate indifference exists when: (1) he or she knew the risk to a prisoner posed by a condition, and (2) disregarded it by failing to take specific measures to abate it.

 A medical need is serious if "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Id. at 1096 *(internal quotation marks omitted).*  We've held that the "existence of chronic and substantial pain" indicates that a prisoner's medical needs are serious, *McGuckin, 974 F.2d at 1060*

 To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Even if a prison official should have been aware of the risk, if he "was not, then [he] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).*

 Here Defendants' failure to follow such procedures isn't, of itself, enough to establish a violation of Plaintiffs' constitutional rights. *See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (order).* Plaintiffs must prove both (1) that the failure to follow distribute the vaccine to the vulnerable population puts them at risk and (2) that Defendants actually knew that these actions put Plaintiffs at risk. *See Gibson, 290 F.3d at 1188.*

 An "intent requirement is either implicit in the word 'punishment' or is not; it cannot be alternately required and ignored as policy considerations might dictate." *Wilson v. Seiter, 501 U.S. 294, 301-302 (1991)*

 Defendants' distribution of vaccines based on a preferential hierarchy that is arbitrary in nature is precisely the issue Plaintiffs seek to rectify by this Motion for Preliminary

Injunction.  It is obvious that based on the medical data available from the CDC, Defendants know precisely the risk posed by the COVID-19 virus in the age 65 and older demographic, and there is a deliberate disregard to abate that risk by assigning arbitrarily prioritized vaccine distribution and allocation as demonstrated *infra.*

As of January 18, 2021, the SNHD website provides the hierarchy of COVID-19 vaccines as follows:

- **Groups eligible for COVID-19 vaccination**      *as of January 18, 2021*
  - **Health Care Workforce (previously Tier One) including personnel who work in:**
    - Hospitals
    - Long term care (includes residents)
    - Laboratories
    - Diagnostic imaging
    - Pharmacies
    - Medical/dental services
    - First responders (EMT/paramedics)
  - **People 70 years old and over**
  - **Public Safety & Security**
    - NV Dept. of Corrections staff
    - Law enforcement, public safety and national security
    - State and local emergency operations managers/staff
  - **Frontline Community Support**
    - Education (Pre-K & K-12) and childcare — public/private/charter school settings
    - Nevada System of Higher Education (NSHE) frontline educators, staff and students
    - Community support frontline staff (i.e. frontline workers who support food, shelter, court/legal and social services, and other necessities of life for needy groups and individuals)
    - Continuity of Governance (state and local)
    - Essential public transportation
    - Remaining essential public health workforce
    - Mortuary services

This priority list does not take any age group into consideration (other than 70 and over) or whether the individuals have previously tested positive for the COVID-19 antibody,

or had previously been diagnosed with COVID-19. This is simply an arbitrary list based on profession neglecting any vulnerable population over the age of 65 years of age.

Simply on the basis of this list distributed on January 18, 2021, it is clear that Defendants failure to distribute the vaccinations to the elderly demographic places them at risk and Defendants actually know these actions put Plaintiffs at risk of chronical and substantial harm.

### 2.      Defendants' Claims to Necessary Resources Is a Failed Excuse To Lack of Distribution of Vaccines to the Elderly Population

The Supreme Court has told us that it is that a prison medical official who fails to provide needed treatment because he lacks the necessary resources can hardly be said to have intended to punish the inmate. Though this had been a correct statement of the law in the Ninth Circuit for approximately thirty years, *see Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986); Spain v. Procunier, 600 F.2d 189, 200 (9th Cir. 1979)*, this Court should draw a direct parallel between fatally flawed arguments of the lack of resources in prisons as Defendants present excuses to the failure to distribute the COVID-19 vaccines to our vulnerable population.

In *Snow v. McDaniel, 681 F.3d 978, 984–87 (9th Cir. 2012).*, the Ninth Circuit affirmed the rule that lack of resources cannot be a defense for the failure to provide constitutionally required medical care for prisoners. *Id.* The prisoner in *Snow* sued doctors and wardens of the Nevada Department of Corrections for declaratory and injunctive relief and damages under § 1983. 681 F.3d at 984. He alleged these officials were deliberately indifferent to his medical needs by denying him necessary hip surgery. *Id. at 984–85.* Citing *Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986)*, the 9th Circuit concluded that the record

supported the inference that the defendants denied surgery to *Snow* due to "improper

motives"—namely, "to avoid eventually paying for it"—and that this inference could show

the defendants acted with deliberate indifference. *See id. at 987.*

Lack of resources is not a defense to a claim for prospective relief because prison

officials may be compelled to expand the pool of existing resources in order to remedy

continuing Eighth Amendment violations. *See LaMarca v. Turner, 995 F.2d 1526, 1536–39,*

*1542 (11th Cir. 1993)* (prison official wouldn't be personally liable if he did everything he

could, but prisoner could get an injunction against official in his official capacity); see also

*Watson v. City of Memphis, 373 U.S. 526, 537 (1963)* (rejecting argument that city couldn't

desegregate parks because of budgetary concerns); *Wright v. Rushen, 642 F.2d 1129, 1134*

*(9th Cir. 1981)* ("[C]osts cannot be permitted to stand in the way of eliminating conditions

below Eighth Amendment standards."). A case seeking prospective relief thus can't be

dismissed simply because there is a shortage of resources.

Here Defendants' vaccination of segments of the population based on profession and

not based on medical, empirical or scientific data, reducing the vaccinations available for the

vulnerable population with higher co-morbidities is not a defense to lack of medical care.

According to the United States Census Bureau, 12% of Nevada's population is over the age of

65 years of age, which translates to approximately 375,000, elderly living in Nevada, whom

should be given priority vaccinations.[8]

///

///

---

[8] https://worldpopulationreview.com/states/nevada-population

3. **The Failure to Prioritize Vaccinations on the Basis of Age and Comorbidities is an Irrational Preference Based on Favoritism and Lacks Empirical Scientific or Medical Data to Support Same.**

The following Chart published by the CDC on January 13, 2021 provides the numbers of deaths resulting from COVID 19 from January 1, 2020 until the 13th of January, 2021.[9] As the chart demonstrates, out of 394,495 deaths across the United States, 266,647 deaths were of the age of 65 years and over, which is a 67.6 percent morbidity rate in the United States.

ALL DEATHS INVOLVING COVID 19

All ages

| | 394,495 |
|---|---|
| Under 1 year | **34** |
| 1–4 years | **21** |
| 5–14 years | **55** |
| 15–24 years | **510** |
| 25–34 years | **2,196** |
| 35–44 years | **5,742** |
| 45–54 years | **15,558** |
| 55–64 years | **38,830** |
| 65–74 years | **70,230** |
| 75–84 years | **90,744** |
| 85 years and over | **105,673** |

_____

[9] https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm

The high rate of death among the elderly segment of the population is sufficient data for prioritization of the elderly to receive vaccinations before other segments of the Nevada communities.

### (a)    Distribution of Vaccinations Should Be Based on Herd Immunity and Medical Data

Herd immunity (or community immunity) occurs when a high percentage of the community is immune to a disease (through vaccination ***and/or prior illness***), making the spread of this disease from person to person unlikely. Even individuals not vaccinated (such as newborns and the immunocompromised) are offered some protection because the disease has little opportunity to spread within the community.[10]

According to John Hopkins, Bloomberg School of Public Health, for infections without a vaccine, even if many adults have developed immunity because of prior infection, the disease can still circulate among children and can still infect those with weakened immune systems. This was seen for many of the aforementioned diseases before vaccines were developed.[11] Herd immunity is when a large enough portion of a community is immune to a virus so that the virus can no longer spread easily from person to person," explains Dr. Ashley Drews, medical director of infection prevention and control at Houston Methodist.

On January 15, 2020, the Reno Gazette published an article stating that Reno Municipal Court judges and staff, including IT staff, lawyers, interpreters and drug testers,

_____

[10] Association for Professionals in Infection Control and Epidemiology;
apic.org/monthly_alerts/herdimmunity/?gclid=CjwKCAiAgJWABhArEiwAmNVTB5EvtyvM1WX2J3vcUFqimsXhvfav-1pv3Hfg2QhEZ51TKEnhOyv1FBoCxZMQAvD_BwE

[11] https://www.jhsph.edu/covid-19/articles/achieving-herd-immunity-with-covid19.html

30

took advantage of a "unique and special opportunity" to receive COVID-19 vaccines Saturday outside of the vaccination priority rules established by Gov. Steve Sisolak's administration.

According to emails obtained by the Reno Gazette Journal, Judge Dorothy Nash Holmes and Judge Shelly O'Neill helped arrange the vaccinations through a clinic for the elderly run by a Reno doctor on Jan. 9, 2021.[12]

Furthermore, on January 11, 2021, again Nevada's Vaccination Program was updated to include Frontline Community Support to include all Clark County School District Employees without any medical, empirical or scientific data to justify the vaccinations of hundreds of individuals that have no comorbidities, are below the age of 65, and are at a low risk of developing complications due to exposure.

The problem is compounded by the fact that people reported having trouble accessing the appointments calendar on the Southern Nevada Health District website, qualified vaccine candidates said appointment availability is the problem today. As of January 15, 2021, the website said no further appointments would be available until Feb. 20, 2021.[13] The failure to provide an infrastructure and overwhelm the system to vaccinate Nevada's vulnerable communities, despite having since October 29, 2020 to coordinate an infrastructure is again the result of Defendants' gross negligence and reckless endangerment of Nevada's elderly population which is the basis for this Motion.

_____

[12] https://www.rgj.com/story/news/2021/01/15/reno-municipal-court-judges-jump-line-covid-19-vaccinations/4178058001/
[13] Fox5vegas.com/coronavirus/new-frustrations-over-vaccine-appointment-availability-in-southern-nevada/article_e0b7625a-5793-11eb-9f50-fb85f5baf27e.html?block_id=1002851

**4.     Defendants Arbitrary Vaccination Program Violates Plaintiffs' Right to Privacy**

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Fourteenth Amendment's Due Process Clause "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg, 521 U.S. 702, 720–21 (1997) (internal quotation marks and citations omitted).*

The Supreme Court has recognized that "one aspect of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment is 'a right of personal privacy, or a guarantee of certain areas or zones of privacy.'" *Carey v. Population Servs. Int'l, 431 U.S. 678, 684 (1977) (quoting Roe v. Taber, 410 U.S. 113, 152, (1973)).*

This right includes "at least two constitutionally protected privacy interests: the right to control the disclosure of sensitive information and the right to 'independence [in] making certain kinds of important decisions.'" *Fields v. Palmdale School Dist., 427 F.3d 1197, 1207 (9th Cir. 2005) , (quoting Whalen v. Roe, 429 U.S. 589, 599–600 (1977); see also Marsh v. County of San Diego, 680 F.3d 1148, 1153 (9th Cir. 2012).*

For example, Defendants' failure to provide Plaintiffs and class members in the 65 years of age and up, vaccinations in a prioritized manner, violates their ability and access to life sustaining medical care and an interference to access of medical care. *See Roe v Wade, 410 U.S. 113, 93 S. Ct. 705; 35 L. Ed. 2d 147; (1973), In Re Quinlan (1975) 70 N.J. 10, 355 A. 2d 647 (NJ 1976)) Barber v. Superior Court (1983): 147 Cal.App.3d 1006 (1983); Cruzan*

1
2

*v. Director, Missouri Department of Health, (88-1503), 497 U.S. 261 (1990): In re Baby K, 16 F.3d 590 (4th Cir. 1994)*

3

**D.      PLAINTIFFS ARE LIKELY TO SUFFER IRREPERABLE HARM**

4
5
6
7
8
9
10
11
12

To obtain a TRO, Plaintiffs must show they will suffer irreparable harm in the absence of the order. *Winter, 555 U.S. at 20.* The Supreme Court has recognized that "the violation of loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns, 427 U.S. 347, 373 (1976).* Notwithstanding Plaintiffs First Amendment rights of privacy, the Eighth Amendment freedoms allow for immediate injunctive relief. *See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 & n.10 (1989); see also Brown v. Plata, 131 S. Ct. 1910 (2011).*

13

**E.      BALANCE OF EQUITIES FAVORS PLAINTIFFS**

14
15
16
17

Plaintiffs must also show that the balance of equities tips in their favor. *Winter, 555 U.S. at 20.* Plaintiffs have shown that they will be harmed by a deprivation of the constitutional right to obtain expedited vaccinations, and that they face a serious risk of bodily harm and death if these vaccines are not distributed to them in a preferential manner.

18
19
20
21
22
23

Plaintiffs recognize that the current pandemic presented an unprecedented health crisis in Nevada, and in this country. The Governor has an immense and sobering responsibility to act quickly to protect the lives of Nevadans from a deadly epidemic. Keeping in mind that the demographic and CDC guidelines and recommendations that senior citizens be prioritized as to the vulnerable group and vaccinated accordingly.

24
25
26
27

Defendants have failed to protect this vulnerable community of elders and as the death toll rises among this group, The Governor has offered no good reason for failing to vaccinate them.  Therefore, the balance of equities weighs in favor of granting a TRO, pending the

28

preliminary injunction hearing, to permit Plaintiffs, namely those 65 years of age and older, to

obtain the COVID-19 Vaccinations as a priority group.

### F.     AN INJUNCTION IS IN THE PUBLIC INTEREST

Lastly, to obtain a TRO, Plaintiffs must show that the granting of a TRO is in the public

interest. *Winter, 555 U.S. at 20.* The public interest is furthered by preventing the violation of

a party's constitutional rights. *Free the Nipple v, City of Ft. Collins, Colo, 916 F.3d 792*

*(2019).* Additionally, for the reasons previously mentioned, the record shows that allowing

Plaintiffs and those 65 years and older to be vaccinated simply eliminates the risk of death or

serious bodily harm.

On January 14, 2021, numerous hospitals in the Las Vegas valley issued a disaster

declaration, claiming hospital resources were exceeded; there was a pause in elective

surgeries, there would have to be a complete reconfiguration of hospital spaces due to

hospitals being overwhelmed with COVID-19 related hospitalizations.[14]

"[I]t is always in the public interest to prevent the violation of a party's constitutional

rights.*" Hobby Lobby Stores, Inc. v. Sebelius, 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd'*

sub nom. *Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014) (quotations omitted).*

Because the requested injunction will accomplish this, the public interest also favors an order

protecting Plaintiffs.

Further, the exigency of this matter and the injunction against Eighth Amendment

violation is abundantly supported by *Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 &*

*n.10 (1989); see also Brown v. Plata, 131 S. Ct. 1910 (2011).*

---

[14]  www.fox5vegas.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Notwithstanding same, a Change.org Petition has been filed on behalf of a Non-profit Group names NV Citizen to Reduce Deaths from Covid-19, demanding that individuals 65 and older be provided preferential vaccination scheduling wherein as of Friday January 15, 2021, 177 individuals signed the Petition.[15]

It is undisputable that providing the vaccine to the most vulnerable demographic of the State of Nevada in a preferential manner will reduce the risk of death, risk of hospitalization, and will lower the burden on Nevada's hospitals and infrastructure. Conversely, there is absolutely no empirical data to deny such an allocation to the senior demographic of the State of Nevada, making the grant of an injunction in this case a matter of overwhelming public interest.

## **CONCLUSION**

Plaintiffs don't doubt the Governor's sincerity in trying to do his level best to lessen the spread of the virus or his authority to protect the Nevada's citizens. *See Jacobson v. Massachusetts, 197 U.S. 11, 27 (1905)*. Plaintiffs also agree that no one, whether a person of faith or not, has a right "to expose the community . . . to communicable disease." *Prince v. Massachusetts, 321 U.S. 158, 166–67 (1944)*.  But arbitrary distribution of vaccines and the lack of expeditious actions to protect our vulnerable population leaves Defendants with no good answers.

Accordingly, Plaintiffs request an injunction be issued as follows:

_____

[15] *See Petition attached hereto as Exhibit "1"*

1.      Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants from dilatory distribution and use of the vaccines in an arbitrary manner.

2.      Issue an Order mandating that Defendants follow the CDC guidelines and recommendations and issue preferential vaccinations to the age group of 65 years of age and Older, and not according to arbitrary professional status.

3.      Issue an Order mandating that a massive vaccination program be utilized and an infrastructure put in place within 72 hours of entry of Order, to include vacant schools, gymnasiums, and stadiums as alternate to enforce the expedited vaccination of this segment of the population

4.      Issue and Order mandating the State's Division of Emergency Management, Nevada National guard and states immunization team to include school nurses, geriatric providers, general practitioners and point to point pharmacies be provided vaccines to distribute and vaccinate this segment of the population

5.      Issue and Order mandating that there shall be no less than a daily distribution of 10% of the vaccines allocated to the State of Nevada utilized daily in a scientific and empirical manner based on comorbidities and age of patients.

As of the date of this Motion, Nevada has received 211,750 vaccines and has distributed 83,674 vaccines as updated January 15, 2021 by the CDC Covid- Data Tracker updated at 6:00 am January 15, 2021.

///

///

///

///

1
2
3

      Accordingly, Plaintiffs are seeking a vaccination rate **of no less than 20,000** vaccines a day be distributed to the elderly population according to the CDC guidelines with patients over the age of 65 receiving preferential vaccinations.

4
5

      DATED this __18th__ day of January 2021.

6
7
8
9
10
11
12

                    **CHATTAH LAW GROUP**

/s/ S. CHATTAH
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
Attorney for Plaintiffs

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### DECLARATION OF SUPPORT OF NATALIE HETLY

I, NATALIE HETLY, declare as follows:

1       I am a Plaintiff in this matter and over the age of 70 years old

2.      I am a retired nurse and was employed as a nurse for over 20 years.

3.      I am familiar with the comorbidities of viral infections such as COVID-19.

4.      On January 11, 2021, Governor Sisolak issued an updated instruction that seniors the age of 70 of more will be given priority to receive vaccines;

5.      On January 13, 2021, I went online to reserve a time to be vaccinated for the COVID-19 virus and I was given the date of February 16, 2021.

6.      I have received specific information that the website for Southern Nevada Health District is incapable of setting appointments for the vaccine and the system is overwhelmed.

7.      There are many individuals that are between the ages of 65 and 70 who have far more risk of complications and death than those who have been given priority for vaccinations in the 16-64 age group based on their professions.

8.      There are many individuals in that age group that are likely to have tested positive for COVID-19, have been exposed to the virus, and may have the antigens and vaccinations on senior citizens should be prioritized over these individuals.

9.      There is no method for tracking whether the individuals given priority vaccinations, have not already developed herd immunity to the virus.

10.     For that reason, it is important that the vulnerable population as an immunodeficient population should be vaccinated first.

11.     These are the facts as I know them to be true.

12.   Under NRS 53.045, I declare under penalty of perjury that the foregoing is true and correct.

_/s/  Natalie Hetly__
Declarant

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "1"

As of 1/15/2021, we have 1,314 views and 177 signatures.

Here is the language for the Petition, with the Petition header at change.org for illustration. The links in the Petition language should work, if you click through:

# Vaccinate the most vulnerable first!



**177 have signed.** Let's get to 200!

Nevada Governor: Vaccinate the most vulnerable first!

**f Share on Facebook**

f Send a Facebook message
✉ Send an email to friends
🐦 Tweet to your followers
🔗 Copy link

NV Citizens to Reduce Deaths from Covid-19 started this petition to Nevada Governor and 8 others

The Covid-19 pandemic has killed more than 300,000 Americans and 3,000 Nevadans. It has sickened and potentially permanently affected many thousands more. Vaccines are now available which offer protection against the virus. Unfortunately, a limited supply of vaccines means that difficult decisions have to be made about who gets vaccinated first.

In most of the world, the priority is to vaccinate front-line essential medical workers, first responders, and then people with underlying health conditions or whose age makes them the most vulnerable to severe illness or death from the virus. Vaccinating those at most risk is considered the key to reducing the number of deaths from the virus. On the national and state level, however, vaccinations are being

prioritized to "lessen disruptions to society and the economy," and in Nevada, that means people in occupations such as banking or payday loan sales, family farming, gaming and retail, including people who are healthy and at low risk for severe illness or death from the virus, have been prioritized over those who have a significantly higher risk because of underlying health issues or age.

People in Nevada at high risk have been moved to near the end of the line for receiving vaccinations. Waiting months longer to receive vaccinations, which can take well over a month to become fully effective, means that high-risk populations will inevitably be exposed and sickened by the Covid-19 virus, leading to unnecessary deaths and overwhelmed hospitals. **@Delay=Death**.

Everyone deserves to be vaccinated, and everyone deserves life. But if the goal is to save lives and prevent serious illness, then the priority should be to vaccinate those most at risk. Americans agree with the science: the top priorities for vaccinations should be, in order, health care workers, people with compromised immune systems due to health problems, and people over the age of 65.

For more information: Petition · Nevada Governor: Vaccinate the most vulnerable first! · Change.org

**change.org**

# NV Citizens to Reduce Deaths from Covid-19

Recipient:          Nevada Governor, Steve Sisolak, Nevada State Senate, Nevada State House,
                     Clark County Commissioners, Washoe County Commissioners, Southern
                     Nevada Health District, Washoe County Health District, Nev...

Letter:             Greetings,

                     Vaccinate the most vulnerable Nevadans first!
                     People in Nevada at high risk have been moved to near the end of the line
                     for receiving vaccinations. Waiting months longer to receive vaccinations,
                     which can take well over a month to become fully effective, means that
                     high-risk populations will inevitably be exposed and sickened by the
                     Covid-19 virus, leading to unnecessary deaths and overwhelmed hospitals.
                     @Delay=Death.
                     Everyone deserves to be vaccinated, and everyone deserves life. But if the
                     goal is to save lives and prevent serious illness, then the priority should be
                     to vaccinate those most at risk. Americans agree with the science: the top
                     priorities for vaccinations should be, in order, health care workers, people
                     with compromised immune systems due to health problems, and people
                     over the age of 65.

# Signatures

| Name | Location | Date |
| --- | --- | --- |
| Launce Rake | Las Vegas, NV | 2020-12-21 |
| Denise Duarte | Las Vegas, NV | 2020-12-21 |
| Kerry Rake | Amherst, NH | 2020-12-21 |
| Gail Houston | Las Vegas, NV | 2020-12-21 |
| Lee Carter | US | 2020-12-21 |
| Glendon Robbins | Las Vegas, NV | 2020-12-21 |
| Justin Favela | Las Vegas, NV | 2020-12-21 |
| DeeAnn Roberts | Sparks, NV | 2020-12-21 |
| Jenny Lehner | Las Vegas, NV | 2020-12-21 |
| Alicia Brasuell | Anaheim, CA | 2020-12-22 |
| Claytee White | Las Vegas, NV | 2020-12-22 |
| Brian Paco Alvarez | Las Vegas, NV | 2020-12-22 |
| Kim Russell | Las Vegas, NV | 2020-12-22 |
| Tracy Skinner | Henderson, NV | 2020-12-22 |
| Larry Domsky | Las Vegas, NV | 2020-12-22 |
| Pam Russell | Reno, NV | 2020-12-22 |
| Annika Young | Salton city, US | 2020-12-22 |
| Chris Webb | Columbia, US | 2020-12-22 |
| Ayden Harward | Cedar Creek, US | 2020-12-22 |
| Mason Fine | Huntington Station, US | 2020-12-22 |

| Name | Location | Date |
| --- | --- | --- |
| Cris Hernandez | San Antonio, US | 2020-12-22 |
| Teresa Mcdaniel | Childersburg, US | 2020-12-22 |
| Courtnee Owens | Accokeek, US | 2020-12-22 |
| Kylee Nichols | Lake in the Hills, US | 2020-12-22 |
| Jenny Guerra | Albemarle, US | 2020-12-22 |
| Stephanie Ayden | Lehigh Acres, US | 2020-12-22 |
| James Gallagher | Bellingham, US | 2020-12-22 |
| Conner Cierpiot | Albuquerque, US | 2020-12-22 |
| Theoria FORTNER | Salt Lake City, US | 2020-12-22 |
| Aris O'Neal | Saint Petersburg, US | 2020-12-22 |
| Charles Dowling | Las Vegas, US | 2020-12-22 |
| Hannah McCollum | Pampa, US | 2020-12-22 |
| Barbara Harrison | Gainesville, US | 2020-12-22 |
| Leah Nelson | Lorton, US | 2020-12-22 |
| Jagroop Parmar | Stockton, US | 2020-12-22 |
| Jay Jacob | Mcdonough, US | 2020-12-22 |
| nicole tucker | Orlando, US | 2020-12-22 |
| Richard Le | Lawrenceville, US | 2020-12-22 |
| Zandra Thomas | Saint Paul, US | 2020-12-22 |
| Leslie McSwain | Lancaster, US | 2020-12-22 |
| dee brown | Los Angeles, US | 2020-12-22 |
| ckark s | Wake Forest, US | 2020-12-22 |

| Name | Location | Date |
|------|----------|------|
| Jasmella Laing | Chula Vista, US | 2020-12-22 |
| Carolyn Toney | Toledo, US | 2020-12-22 |
| Alex Thaxton | Charleston, US | 2020-12-22 |
| Alexander Vainstein | Montgomery, US | 2020-12-22 |
| Lauren Collins | Guthrie, US | 2020-12-22 |
| Shaun Gauf | Kendall Park, US | 2020-12-22 |
| Emma shepherd | Seattle, US | 2020-12-22 |
| Areina Battle | Brooklyn, US | 2020-12-22 |
| Melima Linn | Concord, US | 2020-12-22 |
| Lidia H | Potomac, US | 2020-12-22 |
| Ava Caudill | Kokomo, US | 2020-12-22 |
| Kiana Suess | Las Vegas, US | 2020-12-22 |
| Aki Silva | Seattle, US | 2020-12-22 |
| Teresa Q | Chicago, US | 2020-12-22 |
| Shamaya Corbin | Discovery Bay, US | 2020-12-22 |
| ila jaques | San Angelo, US | 2020-12-22 |
| Marisa Smith | Fond Du Lac, US | 2020-12-22 |
| Erin Mantas | Salt Lake City, US | 2020-12-22 |
| Shanna Licata | Reno, NV | 2020-12-22 |
| Tanya Romero | phoenix, US | 2020-12-22 |
| Lyfe Anderson | Dallas, US | 2020-12-22 |
| Vicki Kolmodin | Seattle, US | 2020-12-22 |

| Name | Location | Date |
|------|----------|------|
| Anahya Stintsman | Fort Hood, US | 2020-12-22 |
| John Stofko | Allentown, US | 2020-12-22 |
| Suleima Styles | Dallas, US | 2020-12-22 |
| Sheldon Kessler | US | 2020-12-22 |
| Saast HInge | Jonesboro, US | 2020-12-22 |
| Evie Bryant | Mount Pleasant, US | 2020-12-22 |
| William Johnson | Modesto, US | 2020-12-22 |
| Dhanwantie Budhram | Ozone Park, US | 2020-12-22 |
| Acxel Vazquez | Omaha, US | 2020-12-22 |
| Marina Souto-Reyes | Albuquerque, US | 2020-12-22 |
| Maddy Ott | Rockledge, US | 2020-12-22 |
| Emma Esquivel | Seattle, US | 2020-12-22 |
| lia l | bruh, US | 2020-12-22 |
| Brookelyn Redekopp | Cody, US | 2020-12-22 |
| ameenah rush | Charlotte, US | 2020-12-22 |
| Julianna Dizor | Jacksonville, US | 2020-12-22 |
| Maddie Arsiaga | Texas, US | 2020-12-22 |
| brandi grogan | Dallas, US | 2020-12-22 |
| sadie sheehan | Syracuse, NY | 2020-12-22 |
| Abigail Brown | Northampton, US | 2020-12-22 |
| eileigh crider | Shippensburg, US | 2020-12-22 |
| maya mcgann | Denver, US | 2020-12-22 |

| Name | Location | Date |
|---|---|---|
| Molly Fahey | Hudson, US | 2020-12-22 |
| Clara Koko | Melbourne, US | 2020-12-22 |
| Lauren Rainey | Centennial, US | 2020-12-22 |
| Ana Jennings | Honolulu, US | 2020-12-22 |
| James moule | Davis, US | 2020-12-22 |
| Ashley Nguyen | Baton Rouge, US | 2020-12-22 |
| Janice Killip | Los Angeles, CA | 2020-12-22 |
| Adrian Fernandez | Joliet, US | 2020-12-22 |
| Nala Farley | Lake Elsinore, US | 2020-12-22 |
| Kewdy Solis | US | 2020-12-22 |
| jalissa valentin | New Haven, US | 2020-12-22 |
| Ashalyn Scott | San Diego, US | 2020-12-22 |
| Tracey Brown | Las Vegas, NV | 2020-12-22 |
| Lois Dohra | Las Vegas, NV | 2020-12-22 |
| Pamela Roberts | Reno, NV | 2020-12-22 |
| Steven Amend | Las Vegas, NV | 2020-12-22 |
| Diane Bush | LAS VEGAS, NV | 2020-12-22 |
| Ginger Bruner | Las Vegas, NV | 2020-12-22 |
| Wendy Boszak | Reno, NV | 2020-12-22 |
| Vicki Mabel | Tallahassee, US | 2020-12-22 |
| Gabriela Hernandez | Newnan, US | 2020-12-22 |
| Alma Vinson | Hollywood, US | 2020-12-22 |

| Name | Location | Date |
|------|----------|------|
| mykailah knowles | Mobile, US | 2020-12-22 |
| Matthew Abrahim | Blue Point, US | 2020-12-22 |
| Kenzie Tracy | Sun Prairie, US | 2020-12-22 |
| gabbi d | Ferndale, US | 2020-12-22 |
| Kog Epic | Running s, US | 2020-12-22 |
| Agim Demirovski | US | 2020-12-22 |
| Nora Yeso | Charlotte, US | 2020-12-22 |
| John Kramer | Marshfield, US | 2020-12-22 |
| Mia Magana | Bellflower, US | 2020-12-22 |
| Amina Frisch | Minneapolis, US | 2020-12-22 |
| Antionette Baltazar | Wellington, US | 2020-12-22 |
| Leah Young | Las Vegas, NV | 2020-12-22 |
| Eunsu Kim | Frisco, US | 2020-12-22 |
| S S | Austin, US | 2020-12-22 |
| John Kim | San Diego, US | 2020-12-22 |
| even a karen is signing this- im the karen btw | Duluth, US | 2020-12-22 |
| Natalie Salsman | Hesperia, US | 2020-12-22 |
| Gavin Giovagnoli | Enfield, US | 2020-12-22 |
| Gregory Stellmach | Minneapolis, US | 2020-12-22 |
| Allison Kesler | Bartow, US | 2020-12-22 |
| Sajin Ayer | Columbus, US | 2020-12-22 |

| Name | Location | Date |
|------|----------|------|
| Abbigayl Russell | Dallas, US | 2020-12-22 |
| Anthony Buccaroni | Athol, US | 2020-12-22 |
| Katie Wright | Roanoke, US | 2020-12-22 |
| Brooke Montgomery | Marcus Hook, US | 2020-12-22 |
| Yasmine Olivarri | San Antonio, US | 2020-12-22 |
| Marina Rodeado | Des Plaines, US | 2020-12-22 |
| Emily Posada | Eagle Pass, US | 2020-12-22 |
| Nicki Schloendorn | Pottstown, US | 2020-12-22 |
| Giovanni vega | york, US | 2020-12-22 |
| Ayat Shendy | Tallmadge, US | 2020-12-22 |
| Kynnedy Peoples | Wichita, US | 2020-12-22 |
| Jayna Vudathala | Ashburn, US | 2020-12-22 |
| emily hernandez | Seguin, US | 2020-12-22 |
| Thalia Garcia | Rochester, US | 2020-12-22 |
| Génesis Hernandez | Dallas, US | 2020-12-22 |
| Daniel Mandujano | Dallas, US | 2020-12-22 |
| Aria Nelson | Richmond, US | 2020-12-22 |
| Krisha Nashte | Frisco, US | 2020-12-22 |
| lamont guy | Raleigh, US | 2020-12-22 |
| Rose Smith | Benson, US | 2020-12-22 |
| Lorin A | Boston, US | 2020-12-22 |
| Kechna Calixte | Saint Leo, US | 2020-12-22 |

| Name | Location | Date |
|------|----------|------|
| Natalia Hernandez | Quincy, US | 2020-12-22 |
| PAMELA SHINE | Dayton, US | 2020-12-22 |
| Allison Gaunce | Milford, US | 2020-12-22 |
| Violet Youngblood | Savannah, US | 2020-12-22 |
| bella watts | Huntington Beach, US | 2020-12-22 |
| VICENTA MONTOYA | Las Vegas, NV | 2020-12-22 |
| Patrick Gaffey | Las Vegas, NV | 2020-12-22 |
| KD MATHESON | LAS VEGAS, NV | 2020-12-22 |
| Maria Ojeda | Las Vegas, NV | 2020-12-22 |
| Brenda Choi | Los Angeles, CA | 2020-12-22 |
| Mikayla Whitmore | Las Vegas, NV | 2020-12-22 |
| Debbie Hall | Las Vegas, NV | 2020-12-22 |
| Darren Johnson | Las Vegas, NV | 2020-12-22 |
| Maryjane Dorofachuk | Las Vegas, NV | 2020-12-22 |
| Laura Martin | Las Vegas, NV | 2020-12-22 |
| Wendy Kveck | Las Vegas, NV | 2020-12-23 |
| Bill Jacobs | Las Vegas, NV | 2020-12-23 |
| Chris Giunchigliani | Las Vegas, NV | 2020-12-23 |
| Patrick McCafferty | Las Vegas, NV | 2020-12-24 |
| MADELENE Capelle | Las Vegas, NV | 2020-12-24 |
| Dave Berns | Las Vegas, NV | 2020-12-25 |
| Jeannie Hua | Las Vegas, NV | 2020-12-26 |

| Name | Location | Date |
|------|----------|------|
| Marlene Adrian | Las Vegas, NV | 2020-12-29 |
| Christopher Kindred | Las Vegas, NV | 2021-01-07 |
| Debbe Sussman | Las Vegas, NV | 2021-01-15 |