AARON D. FORD
  Attorney General
Steve Shevorski (Bar No. 8256)
  Chief Litigation Counsel
Craig A. Newby (Bar No. 8591)
  Deputy Solicitor General
Akke Levin (Bar No. 9102)
  Senior Deputy Attorney General
Office of the Attorney General
555 E. Washington Ave, Ste. 3900
Las Vegas, NV 89101
(702) 486-3420 (phone)
(702) 486-3773 (fax)
sshevorski@ag.nv.gov
alevin@ag.nv.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL KREPS, an individual; PAULA KELESIS, an individual; DANNY ITZHAKI, an individual; and NATALIE HETLY, and individual on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STEPHEN F. SISOLAK, in his official capacity, as Governor of the State of Nevada, AARON DARNELL FORD, in his official capacity as Attorney General of the State of Nevada; IHSAN AZZAM, in his capacity as Nevada Chief Medical Officer; NEVADA DEPARTMENT OF HEALTH AND HUMAN SERVICES, a Nevada Administrative Agency, DOES 1 through 100,<br><br>Defendants. | Case No. 2:21-cv-00052-JCM-EJY<br><br>**STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION** |

Defendants Stephen F. Sisolak, Aaron Darnell Ford, Ihsan Azzam and Nevada Department of Health and Human Services (collectively, **Defendants**), by and through counsel, oppose Plaintiffs' Emergency Motion for Preliminary Injunction.

. . .

. . .

. . .

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

This Court should deny Plaintiffs' motion for a mandatory injunction. Plaintiffs' purported constitutional issues are not ones of first impression. ECF No. 5 at 19:6-21. They seek to junk established precedent under the Eighth Amendment and the right to privacy and ask the Court to recognize unheard-of rights (i) both to a vaccine and (ii) and then to determine how Nevada should distribute it to Nevadans.

Plaintiffs can only argue that this case is one of first impression by jettisoning established authority that condemns their case. The Eighth Amendment only applies in the post-conviction context or as a substantive limit on what the state can criminalize. The right to privacy safeguards against government compulsion of private information and government restriction of individual choices on marriage, procreation, contraception, family relationships, child rearing, and education. There is no privacy right to receive medical treatment. Plaintiffs' mistaken attempt to ignore jurisprudence does not transform this case into one of first impression.

Even putting aside these fatal legal hurdles, Plaintiffs never bother to explain in what way Nevada's Covid-19 Vaccination Program Playbook is arbitrary. In fact, they admit that people over 70 are in a higher risk group than those in the 65-69 age group, which is why Nevada gives the former group priority over the latter. There is nothing arbitrary about that.

Plaintiffs barely pay lip service to the other requirements of mandatory injunctive relief. The Ninth Circuit does not permit a plaintiff to merge all requirements of injunctive relief simply because Plaintiffs have pled flimsy constitutional theories.

This Court should not accept Plaintiffs' invitation for a Court to intrude into a dynamic circumstance traditionally left to the political branches. President Biden on his first day in office produced 10 Executive Orders pertaining to COVID-19, including a recommendation that states should begin vaccinating persons 65 and older in conjunction

. . .

with a massive effort to increase vaccine supply.[1] Plaintiffs passionately disagree with Nevada's vaccine plan as currently constituted but no authority permits them to insert themselves as unelected officials to dictate Nevada's vaccine policy, which always has been, is now, and will be closely coordinated with our local officials and federal partners.

## II. Background

### A. Plaintiffs' allegations and claims for relief

Plaintiffs are four putative class plaintiffs over the age of 65; Michael Kreps, Paula Kelesis, Daniel Itzhaki and Natalie Hetly. ECF No. 3 at ¶¶1-3. Plaintiffs challenge the State of Nevada's vaccination plan to alleviate the pandemic of COVID-19 among Nevada residents. *Id*. at ¶¶67-81. Plaintiffs assert they have been unable to receive a COVID-19 vaccination in the State of Nevada despite wanting to receive one. *Id*. at ¶29(b).

None of the plaintiffs alleges having an underlying health condition. None of them alleges being unable to practice social distancing. Plaintiffs do not allege they are working, or that they work in a sector that exposes them to the public.

Plaintiffs Daniel Itzahki and Natalie Hetly are over 70 years old. *Id*. at ¶3. This makes them already eligible for vaccination. Ms. Hetly in her sworn statement supporting Plaintiffs' motion for preliminary injunction admits to receiving an appointment for receiving the vaccine on February 16, 2021. ECF No. 5 at 38, ¶5. Mr. Itzahki did not give a sworn statement and neither do any of the other Plaintiffs.

Plaintiffs assert several causes of action: Nevada's vaccine distribution plan violates strict scrutiny under the equal protection clause. ECF No. 3 at ¶¶82-93. Nevada's vaccine distribution plan violates their privacy interests under the procedural due process. *Id*. at ¶¶94-101. Nevada's vaccine distribution plan violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Id*. at ¶¶103-113. Nevada Constitutional claims that mimic the federal ones. *Id*. at ¶¶114-127.

. . .

---

[1] https://www.whitehouse.gov/wp-content/uploads/2021/01/National-Strategy-for-the-COVID-19-Response-and-Pandemic-Preparedness.pdf (last visited on January 21, 2021).

B. **Plaintiffs' shifting theories**

Plaintiffs assert in their pleading that, "…using the guidelines set in 42 U.S. Code Chapter 7," all elderly persons of 62 years and older should be given first priority for COVID-19 vaccines. *Id.* at ¶29(a)-(d). But Plaintiffs' theory is based on the early retirement age in section 402 of the Social Security Act.[2] Plaintiffs, in their motion for preliminary injunction, appear to have abandoned their Social Security Act theory and land on the age range of 65 and older. ECF No. 5 at 9:7-8.

Plaintiffs now to assert that the Center for Disease Control (**CDC**) issued new guidelines on January 12, 2021 expanding vaccine eligibility to persons 65 or older. *Id.* at 2:14-17. CDC, as yet, has made no such recommendation for persons 65 or older. The CDC trusts all states, including Nevada, to develop their own vaccine plan.

The CDC published the COVID-19 Vaccination Program Interim Playbook for Jurisdiction Operations on September 16, 2020. Ex. A at App. 1.[3] Even in the Executive Summary it is plain that CDC recommendations are not mandatory:

> Early in the COVID-19 Vaccination Program, there may be a limited supply of COVID-19 vaccine, and vaccination efforts **may** focus on those critical to the response, providing direct care, and maintaining societal function, as well as those at highest risk for developing severe illness from COVID-19.

*Id.* at App. 5. (emphasis added).

The CDC did not create a mandatory form vaccine plan. The CDC envisioned that state vaccine plans would be "flexible" due to changing supply levels of the vaccine. *Id.* at App. 10. The CDC concluded by describing the malleable, interim nature of their own recommendations as the CDC responds to the pandemic:

---

[2] Plaintiffs never explain the relevance of section 402 of the Social Security Act since it concerns eligibility requirements for persons seeking early retirement benefits before attaining a retirement age. *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 70-71 (3rd Cir. 1996).

[3] Defendants request that this Court take judicial notice of Exhibits A-G under Federal Rule of Evidence 201. These documents come from trusted sources, state and federal websites. *See Daniels–Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because they were government entities).

> …It is important to note that recommendations on the various population groups to receive initial doses of vaccine could change after vaccine is available, depending on each vaccine's characteristics, vaccine supply, disease epidemiology, and local community factors.

*Id.* The interim nature of the CDC's recommendation for vaccine distribution was reflected in its definition of critical populations, which were "listed in no particular order." *Id.* at App. 14.

Plaintiffs' cite in footnote 1 on page 2, which appears to be their basis for their case, is not a CDC recommendation at all. Plaintiffs' cite is to a PowerPoint by the Advisory Committee on Immunization Practices (**ACIP**). *Id.* at 2 n.1, *see also* Ex. B at App. 58. The PowerPoint is an "Interim Recommendation." *Id.* at App. 98. ACIP recommendations do not become CDC recommendations until approved by CDC's director and U.S. Department of Health and Human Services and then published in the CDC's Morbidity and Mortality Weekly Report. Ex. C, App. 100.[4] Plaintiffs never demonstrate that the ACIP recommendation they cite has been published in the MMWR.

The CDC's actual recommended guidance has not changed since December 22, 2020. Ex D, App 101-102.[5] The CDC's guidance has four groups. *Id.* Phase 1a consists of healthcare personnel and long-term care residents. *Id.* Phase 1b is made up of frontline essential workers and persons over 75. *Id.* Phase 1c are persons 65-74, persons 16-64 years old with underlying medical conditions, and other essential workers. *Id.* Vaccine allocation to everyone else will eventually be addressed as supply increases. *Id.*

Finally, the CDC itself has never advocated that states simply regurgitate the CDC's guidance. In the CDC's Vaccination Program Interim Playbook, the CDC wrote that each state should identify critical populations in their health jurisdiction. Ex. A, supra at App. 15. The CDC wrote that "[j]urisdictions should develop plans to ensure equitable access to vaccination for each of the critical populations," but left it up to states to determine order.

---

[4] [ACIP Vaccine Recommendations and Schedules | CDC](#) (last visited on January 21, 2021).
[5] [When Vaccine is Limited, Who Should Get Vaccinated First? | CDC](#) (last visited January 21, 2021).

1  *Id*. The CDC then gave a non-exhaustive list of critical populations, but they were not listed
2  in order of importance. *Id*.

3          C.        **Nevada's vaccine distribution plan**

4          Nevada developed a COVID-19 Vaccination Program, Nevada's Playbook for
5  Statewide Operations. Ex. E, Title Page at App. 103. The current version is number 3. *Id*.
6  Nevada recognizes that its response to the COVID-19 pandemic and vaccine distribution
7  will be dynamic and subject to revision as new information is available. *Id*. at App. 111.
8  Nevada tasked public health experts to create its COVID-19 vaccination program, carefully
9  considered guidance from the CDC vaccination, and response plans from prior pandemic
10 threats.

11         In response to the problem of vaccinating persons in Nevada during COVID-19
12 pandemic, Nevada created a team of public health experts, led by Richard Whitley, Director
13 of the Department of Health and Human Services. *Id*. at App. 117. Nevada's Chief Medical
14 Officer or his designee also provides guidance for Nevada's vaccine playbook. *Id*. at App.
15 118. The state and local authorities coordinate their efforts to attempt to ensure that there
16 is swift and equitable distribution of the COVID-19 vaccine. *Id*. Nevada governmental
17 authorities also collaborate with non-profits and business groups to engage with Nevada's
18 communities. *Id*. at App. 119-120.

19         Nevada also consulted guidance from the federal level. *Id*. at App. 114, 117, and 121.
20 Nevada is following the CDC's COVID-19 Vaccination Planning Assumptions for
21 Jurisdictions. *Id*. at App. 114. Nevada consulted the CDC's Roadmap to Implementing
22 Pandemic Influenza Vaccination of Critical Workforce. *Id*. at App. 125. Nevada also
23 considered guidance from the CDC, the ACIP, the National Institutes of Health (**NIH**), and
24 National Academies of Sciences, Engineering, and Medicine (**NASEM**) to determine
25 Nevada's strategy for determining critical populations of Nevada citizens for its vaccination
26 program. *Id*. at App. 130.

27         Nevada's vaccination plan was guided by scientific data, as well as key goals. *Id*. at
28 App. 130. Nevada developed its plan after considering the need (i) to maximize benefits

and minimize harms, promote justice, mitigate health inequities, and promote transparency. *Id*. Nevada believes its plan, although a dynamic document subject to changes based on data, experience, and vaccine supplies, will "mitigate as much disease spread and death as possible." *Id*.

Nevada's vaccination plan sets out in detail the vaccination priority groups. Four groups are currently eligible to receive COVID-19 vaccination under Nevada's plan. Ex. F, App. 258-262. These groups are the health care workforce, persons 70 years of age or older, public safety and security, and frontline community support. *Id*. at App. 259-260. As more vaccine doses become available to Nevada from the CDC, priority will be given to Nevadans age 65-69, Nevadans 16-64 years of age with underlying conditions, individuals with disabilities, Nevadans experiencing homelessness, and then healthy adults aged 16-64. Ex. G at App. 265.

Nevada's vaccination plan explains its reason for its order priority. *Id*. at App. 264. Nevada gave 7 detailed reasons for priority determinations. *Id*. These reasons were (1) level of exposure to COVID-19, (2) length of exposure, (3) importance of job/special technical skill, (4) likelihood of increasing community spread, (5) mortality rate, (6) morbidity rate, and (7) immune response. *Id*. Prioritization was done in light of "the need to protect the functioning of Nevada's critical infrastructure and the safety of workers in the state" because vaccine doses are limited. *Id*. at App. 264.

**D.  Plaintiffs concede 4x as many persons 70 and over died from COVID-19 than persons in the 60-69 age group**

Plaintiffs write that 3,500 people have died from COVID-19 in Nevada. ECF No. 5:14:10-11. Plaintiffs then conceded that 2,500 of this group were over 70 years of age. *Id*. at 14:12-13. 600 out of the 3,500 persons who died from COVID-19 were between 60-69 years of age. *Id*. Accordingly, Plaintiffs concede (i) that age increases the mortality risk of those infected with COVID-19 and (ii) 4X as many persons over 70 died from COVID-19 in Nevada than those in the 60-60 age bracket.

. . .

### III. Legal standards

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20, (2008) (rejecting "possibility" standard and holding that plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction."). "A preliminary injunction is an 'extraordinary and drastic remedy' ...; it is never awarded as of right." *Munaf v. Geren,* 553 U.S. 674, 689–90 (2008).

"A preliminary injunction can take two forms." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571 F.3d 873, 878 (9th Cir.2009). First, "[a] prohibitory injunction prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits.'" *Id.* (quoting *Chalk v. U.S. Dist. Ct.,* 840 F.2d 701, 704 (9th Cir.1988)). Second, "[a] mandatory injunction 'orders a responsible party to take action.'" *Id.* at 879 (quoting *Meghrig v. KFC W., Inc.,* 516 U.S. 479, 484, (1996)) (internal quotation marks omitted). "A mandatory injunction 'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'" *Id.* (alterations in original) (quoting *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1979)) (internal quotation marks omitted).

Plaintiffs seek to throw the status quo on the ash heap and implement their own authoritarian regime. They seek an order from this Court to prohibit Defendants from "dilatory distribution" and use of vaccines in "an arbitrary manner." ECF No. 5 at 36:1-3. They seek an order requiring vaccine distribution to persons aged 65 and above, regardless of professional status (and presumably regardless of health status). *Id.* at 36:4-6. An order requiring Defendants to occupy vacant schools, gymnasiums and stadiums to provide for a "massive vaccination program." *Id.* at 36:8-11. An order dragooning school nurses, geriatric providers, general practitioners, and point-to-point pharmacies to vaccinate Nevadans 65 or older. *Id.* at 36:12-16. Finally, an order mandating a daily distribution of

10% of allocated vaccines based on "comorbidities and age of patients." *Id.* at 36:17-20. All without consideration as to how Plaintiffs or this Court would undertake this herculean project.

The Ninth Circuit has stated that "unless the facts and law clearly favor the moving party" the Court should deny the requested relief. *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)). A court, when evaluating the propriety of a mandatory injunction, that "[b]ecause it is a threshold inquiry, does not need to consider the three remaining *Winters* factors when a likelihood of success on the merits is absent." *Google, Inc.*, 786 F.3d at 740.

## IV. Discussion

### A. Plaintiffs are unlikely to succeed on the merits

Plaintiffs allege that two constitutional claims support their requested mandatory injunction. First, Plaintiffs argue Nevada's decision to not give priority vaccination to persons aged 65 and above violates the Eighth Amendment's prohibition on cruel and unusual punishment. ECF No. 5 at 23:13-15. Second, Plaintiffs argue that Nevada's vaccine plan violates their right to privacy. Plaintiffs' arguments lack merit.

#### 1. Two plaintiffs lack standing

As an initial matter, Plaintiffs Itzhaki and Hetly lack standing to be putative class representatives. "[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting 3 HERBERT B. NEWBERG ON CLASS ACTIONS § 3:19 (4th ed. 2002)).

To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, __U.S. ___, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is . . .

'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Here, Plaintiffs purport to represent a class that cannot access a vaccine under Nevada's plan because they are under the age of 70. But Mr. Itzhaki and Ms. Hetly are both over seventy years of age. ECF No. 3 at ¶3. Nothing prevents them from obtaining a COVID-19 vaccine should they desire to take it. Indeed, Ms. Hetly states that she has made such an appointment. ECF No. 5 at 38, ¶5. Even accepting their incorrect legal theories, Mr. Itzhaki and Ms. Hetly have no injury caused by Nevada's vaccine plan, which is redressable by this Court.

**2. Precedent forecloses applying the Eighth Amendment here**

Disposing of Plaintiffs' Eighth Amendment challenge is not a difficult question. The key to understanding the limits of this amendment's applicability is in its text and the history surrounding its adoption.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The natural reading of this text is as a limit on government actors having criminal law job functions. *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). The history leading up to the amendment's adoption confirms the same understanding. *Id.* at 664-65. The Ninth Circuit has expanded this definition by holding that the Eighth Amendment also imposes "substantive limits on what the government may criminalize." *Martin v. City of Boise*, 920 F.3d 584, 616 (9th Cir. 2019).

Simply put, the eighth amendment's prohibition against cruel and unusual punishment was designed to protect those convicted of crimes. *Ingraham*, 430 U.S. at 664; *Martin*, 920 F.3d at 598. Plaintiffs do not allege they fit within that group.

Undeterred, Plaintiffs analogize their circumstance of being over 65 years of age (but not yet 70) and without being given priority over frontline workers as being "no different than a prison denying an inmate medical care." ECF No. 5:16-20. That argument is a non-starter. Nevada is not using the criminal laws to punish their status of being over the age of 65. Nevada, consistent with a hundred-year-old precedent (*Jacobson v. Commw. of*

*Mass.*, 197 U.S. 11, 31, (1905)), is using its broad latitude to enact protective measures that have a real and substantial relation to the COVID-19 pandemic.

Even if the Eighth Amendment did apply (it doesn't), Plaintiffs' deliberate indifference arguments do not hold water. When an inmate alleges delay of medical treatment evinces deliberate indifference, the inmate must show the delay led to further injury. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)(holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference"). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). Plaintiffs do not provide any proof that Nevada is deliberately indifferent to their age group, let alone that a delay in receiving vaccinations will harm them based on their specific medical needs. Nevada's playbook puts those 65 years and older in the very next vaccination category under those 70 years and older. Ex. G, *supra*. *None* of the Plaintiffs alleges unique circumstances that makes waiting longer unacceptable.

Plaintiffs allege that giving priority to the health care workforce, persons 70 years of age or older, public safety and security, and frontline community support is arbitrary. ECF No. 5 at 26:25-27:1-2. Nothing could be further from the truth. Nevada's vaccine plan was developed by public health experts, aligns with CDC recommendations, takes on board the lessons of dealing with past pandemic preparation, and was the result of careful consultation with local officials, community leaders, and the business community. Ex. E, *supra*. Moreover, this argument presents a conflict within their plaintiff-group: certainly Plaintiffs are not arguing that providing priority to Plaintiffs Itzhaki and Hetly (both over 70) over Plaintiffs Kreps and Kelesis (both under 70) is arbitrary.

Plaintiffs spend a great deal of time praising Israel's response to the COVID-19 pandemic. ECF No. 5 at 17-18. It is unclear what point Plaintiffs are making but it is clear that Plaintiffs are missing several key differences between Israel and Nevada. These differences are made plain by a recent article published by the Brookings Institution. Israel

is a nation state with a unique public health service controlled by four semi-private Health Management Organizations, a single electronic medical record system, and paid for by an individual mandate.[6] That Nevada does not have a public health structure like the nation-state Israel does not make Nevada's response arbitrary.

### 3. Plaintiffs' right to privacy argument lacks any basis

Plaintiffs' contention that the right to privacy is an affirmative right to receive a vaccine is not supported by any precedent. The zone of privacy right protects against government interference with two different types of interests. *Whalen v. Roe*, 429 U.S. 589, 599 (1977). The first interest is avoidance of government compulsion to disclose personal matters, *i.e.*, the right to be left alone described by Justice Brandeis' dissent in *Olmstead v. United States*. *Id*. n.25 (citing *Olmstead v. United States.*, 277 U.S. 438, 478 (1928)). The second interest is the right to be free from government interference in making important life decisions such as marriage, procreation, contraception, family relationships, child rearing, and education. *Whalen*, 429 U.S. at 599 n. 26 (collecting cases). No precedent supports Plaintiffs' misguided attempt to transform this second type of privacy interest, a right to be free from government interference in limited circumstances, into an affirmative right to receive a benefit from the government.

While the Supreme Court appears to have recognized a fundamental "right to *refuse* unwanted medical treatment . . . under the Fourteenth Amendment," *Wash. v. Glucksberg*, 521 U.S. 702, 722 n.17 (1997) (emphasis added), no fundamental right exists to *receive* medical treatment, such as the vaccines Plaintiffs demand. Plaintiffs had the obligation to identify the particular source of the constitutional right at issue. *Albright v. Oliver*, 510 U.S. 266, 271 (1979). No precedent has ever elevated any right to receive health care to fundamental right status similar marriage, procreation, contraception, family relationships, child rearing, and education. In fact, established precedent bars Plaintiffs' theory. "As a general matter, a State is under no constitutional duty to provide substantive

---

[6] The secret sauce behind Israel's successful COVID-19 vaccination program (brookings.edu) (last visited on 1/21/21).

services for those within its border." *Youngberg v. Romeo*, 457 U.S. 307, 317 (citing *Harris v. McRae*, 448 U.S. 297, 318 (1980) (publicly funded abortions); *Maher v. Roe*, 432 U.S. 464, 469 (1977) (medical treatment)).

Plaintiffs then contend that Nevada is interfering with their right to vaccinations in a prioritized manner. ECF No. 5 at 32:2-23. But Plaintiffs never grapple with the problem that the federal government distributes the vaccines to the states, not to private individuals. Nevada, by prioritizing vaccine distribution as it has, is not interfering with any ability of Plaintiffs to obtain the vaccine from any other source.

Plaintiffs in their amended complaint assert claims for due process and equal protection, but this does not matter to what test applies. Age is not a suspect classification. *Massachusetts v. Murgia*, 427 U.S. 307, 313-14 (1976). As shown above, no fundamental liberty right is at issue. *Youngberg, supra*. The rational-basis test functions the same for due-process and equal-protection claims. *See Munoz v. Sullivan*, 930 F.2d 1400, 1404–05 & n. 10 (9th Cir.1991). It is "highly deferential." *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1279 (9th Cir.2004) (quotation omitted).

In a rational-basis review of equal-protection claims, the classification is upheld "'if there is a rational relationship between the disparity of treatment and some legitimate government purpose.'" *Kahawaiolaa,* 386 F.3d at 1279 (quoting *Heller v. Doe, 509 U.S. 312*, 319–20 (1993). "[A] classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification,'" *Heller*, 509 U.S. at 320 (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)), and thus classifications may be set aside "only if they are based on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." *Clements v. Fashing*, 457 U.S. 957, 963 (1982). The government "'has no obligation to produce evidence to sustain the rationality of a statutory classification'; rather, '[t]he burden is on the one attacking the legislative arrangement to negate every conceivable basis which might support it.'" *Kahawaiolaa*, 386 F.3d at 1280 (quoting *Heller*, 509 U.S. at 320). The "Equal Protection Clause is satisfied so long as there is a plausible

policy reason for the classification, the legislative facts on which the classification is apparently based rationally may have been considered to be true by the government decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Id.* (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11–12, (1992)).

Nevada's vaccine program is presumed to be valid. *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994). Because Nevada's vaccine program easily meets the rational basis test, Plaintiffs never confront or analyze the issue. Prioritizing health care workforce, persons 70 years of age or older, public safety and security, and frontline community support a legitimate governmental interest. Persons over 70 are extremely vulnerable to hospitalization or death. The remainder of the prioritized group provide essential government services. Nevada could and did rationally conclude that their prioritization plan to distribute a scarce resource, i.e., the vaccine, was rationally related to its public health goals.

Because Plaintiffs cannot demonstrate a likelihood of success on the merits, this Court should stop its analysis and deny Plaintiffs' request for a mandatory injunction. Even if the Court considers the other *Winters'* factors, the result is the same.

**B.  Irreparable harm cannot be presumed**

Plaintiffs' irreparable harm argument lacks merit. Plaintiffs contend that a First Amendment violation, in and of itself, is irreparable harm. ECF No. 5 at 33:4-5. Even if this were so, Plaintiffs never pled a First Amendment claim. *See* ECF No. 3 at 17-23. Plaintiffs then make the same argument but apply it to the Eighth Amendment. But any putative threat to a constitutional interest in and of itself constitutes irreparable harm.

As Plaintiffs admit, they had the burden to prove that they are "likely" to suffer irreparable harm—not merely that irreparable harm is "possible." Emergency Motion at 22:28-23: 2 (citing *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)). But here, Plaintiffs' entire argument is based on mere possibility of harm alone.

. . .

Plaintiffs have dodged the evidentiary requirement to show irreparable harm. The Ninth Circuit has repeatedly said that courts cannot presume irreparable harm, even where a constitutional violation is alleged. *G&G Fremont, LLC v. City of Las Vegas*, No. 2:14-cv-00688-GMN-GWF, 2014 WL 4206882, 2* (D. Nev. Aug. 25, 2014). Because they assume, they have shown irreparable harm by mere pleading, Plaintiffs ignore that Ms. Hetly has a vaccine appointment. Mr. Itzhaki is over 70 and can obtain a vaccine should he wish. Neither Ms. Kelesis nor Mr. Kreps has disclosed that they have any risk factor related to COVID-19 other than age. Plaintiffs' irreparable harm conclusion lacks all evidentiary support to warrant such drastic relief in the form of an "emergency injunction."

**C.    The balance of equities does not favor a mandatory injunction**

Plaintiffs' contention that the balance of equities supports injunctive relief is simply a regurgitation of their irreparable harm argument, which asks this Court to presume the equities favor them because they have alleged a constitutional claim. ECF No. 5 at 15-17. No precedent supports that view.

All Plaintiffs have done is essentially merged the first *Winters* factor with all the others. "A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer,* 680 F.3d 1068, 1072 (9th Cir.2012) (citation and emphasis omitted). They cannot meet all of the *Winters* factors by presuming that their interpretation of the law is correct. *Coltharp v. Herrera,* 584 Fed. Appx. 334, 336 (9th Cir. 2014).

The Defendants have a strong interest in upholding the Nevada vaccine plan. That plan serves vital state goals of safeguarding first responders, essential public safety workers, and Nevada's most vulnerable population.

Plaintiffs' contention that the Defendants have offered no good reason for their vaccination plan, ECF No. 5 at 33:24-26, ignores that Nevada's basis for its vaccine plan is the CDC's COVID-19 Vaccination Planning Assumptions for Jurisdictions, the CDC's Roadmap to Implementing Pandemic Influenza Vaccination of Critical Workforce guidance from the ACIP, the NIH, the NASEM, and its own past experience. Each priority group is

based on sound reasoning: For example, groups with high levels of exposure to COVID-19, those who have "unavoidable, close contact with those who may have COVID-19," such as doctors, teachers, and frontline workers. Ex. G, supra at 264. There is nothing "arbitrary" about such classification, as Plaintiffs repeatedly contend.

Moreover, as Plaintiffs acknowledge, Nevada's vaccination plan puts all four Plaintiffs in the highest two categories of priority in the general population lane based on their age alone. Emergency Motion at 11. Plaintiffs are thus arguing against themselves when they say Nevada created an arbitrary and capricious tier system. *Id*. at 14.

The balance of equities therefore strongly tilts in the Defendants' favor when the Court considers Plaintiffs' draconian mandatory injunction request. Despite Plaintiffs' relative priority status, Plaintiffs demand that Defendants immediately commandeer and occupy private property such as stadiums and gymnasiums to accommodate them, which could expose the State to severe liability under state and federal takings law. See *Kirby Forest Indus., Inc. v. United States,* 467 U.S. 1, 5 (1984). Plaintiffs then next demand that Nevada hire, or dragoon (Plaintiffs aren't clear on this point), persons to work on vaccination team for an undetermined time. Plaintiffs' mandatory injunctive relief request, if granted, would be an unprecedented intrusion into the state's power over public health matters during a pandemic.

**D.     The public interest does not support a mandatory injunction**

For the third time, Plaintiffs seek to junk an element of preliminary injunctive relief by assumption. ECF No. 5 at 34:4-10. No precedent supports their view that they can skip the remaining *Winters'* requirements by simply alleging a tenuous constitutional theory.

Plaintiffs write that "the record shows that allowing Plaintiffs and those 65 and older to be vaccinated simply eliminates the risk of death or serious bodily harm." ECF No. 5 at 34:8-10. Tellingly, Plaintiffs cite no evidence for that extraordinary statement. Plaintiffs simply ignore the public's interest in having public safety officers, first responders, and a significantly more at-risk population vaccinated first.

. . .

Further, the presidential administration has changed. President Biden on his first day in office produced 10 Executive Orders pertaining to COVID-19. Nothing in the public interest supports Plaintiffs' invitation to have this Court interfere with Nevada's opportunity to cooperate and benefit from the federal government's new and pronounced vigor in tackling this pandemic.

### E. Plaintiffs' requested relief is vague and not narrowly tailored

Rule 65(d) requires that any injunction or restraining order be "specific in terms" and describe "in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." "[T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Plaintiffs never confront this requirement.

Plaintiffs request for a mandatory injunction is littered with impossibly vague obligations that leave Defendants at constant peril of failing to live up to Plaintiffs' autocratic regime. Plaintiffs request a "massive vaccination program be utilized and an infrastructure put in place" in 72 hours, including but not limited to occupying vacant schools, gymnasiums and stadiums. ECF No. 5 at 36:8-11. Plaintiffs request an order that Defendants not be "dilatory" and not distribute vaccines in an "arbitrary manner." *Id.* at 36:1-3. Plaintiffs request that Defendants not vaccinate people based on "arbitrary professional status." *Id.* at 36:4-7. Plaintiffs then request that vaccines be allocated based on a "scientific and empirical manner" based on comorbidities and an undisclosed age minimum of patients. *Id.* at 36:17-20.

The vague and undefined nature of these commands leaves Defendants at constant danger of falling afoul of a court order. Nowhere are there definitions of what Plaintiffs believe is dilatory, arbitrary, arbitrary professional status, scientific, or empirical. Plaintiffs request for a mandatory injunction does not clearly describe the prohibited or required conduct that they order may require.

**V.   Conclusion**

For these reasons, this Court should deny Plaintiffs' motion.

DATED this 22nd day of January, 2020.

        AARON D. FORD
        Attorney General

    By:   */s/   Steve Shevorski*
        Steve Shevorski (Bar No. 8256)
        Chief Litigation Counsel
        Craig A. Newby (Bar No. 8591)
        Deputy Solicitor General
        Akke Levin (Bar No. 9102)
        Senior Deputy Attorney General
        *Attorneys for Defendants*